The St. Mary's Home for Children, etc., *et al.* Defendants in Error, *vs.* William McLardy Dodge, Plaintiff in Error.

*Opinion filed February 20, 1913.*

1. Wills—*when party cannot complain of alleged error in submitting questions to a jury.* A defendant to a proceeding in the circuit court to establish and probate an alleged lost will cannot complain of alleged error in empaneling a jury and submitting to it the questions of fact involved, where the record shows not only that he made no objection to such action but acquiesced therein.

2. Same—*party seeking to probate will must produce subscribing witnesses, if possible.* Under section 2 of the Wills act a party seeking to probate a will in the county or probate court must produce the subscribing witnesses as witnesses if they are living, sane and within the jurisdiction of the court; and the same rule applies on appeal to the circuit court from an order of the county court refusing to admit the will to probate, notwithstanding the provisions of section 13 of the same act.

3. Same—*what amounts to a proceeding to admit will to probate.* An appeal to the circuit court from an order of the probate court refusing to grant the prayer of a petition to establish an alleged lost will and admit it to probate is a proceeding to probate the will, and it is incumbent upon the petitioner to make the same

proof as in any other proceeding to probate a will, and in addition, in order to overcome the legal presumption that the testatrix destroyed the will in her lifetime, to show that the will was in existence at her death and was lost or destroyed after that time.

4. SAME—*presumption where will cannot be found after testator's death.* Where a will is retained in the possession of the testator after its execution but cannot be found after his death, the presumption is that the testator destroyed the will intending to revoke it, and it will not be presumed that it was destroyed by some other person without the testator's knowledge or authority, as this would be to presume a crime.

5. SAME—*a lost will cannot be established upon unsatisfactory evidence.* Lost or destroyed wills cannot be established and the distribution of estates determined upon unsatisfactory evidence, such as that of a single witness, who testifies that after the death of the testatrix she found in her clothing, and gave to her husband, a paper enclosed in a wrapper of the same size and color as one shown to her in court a year and a half after the incident occurred, and which is claimed to be a *fac simile* of the alleged will.

6. SAME—*what does not excuse failure to produce subscribing witness.* Failure to produce one of the subscribing witnesses as a witness in the circuit court, on appeal from the probate court, is not excused where the testimony shows that he is living and in business in the city, and no reason for not producing him is given on the trial except that he is not in the city.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

TATGE & KOEPKE, S. G. ABBOTT, and E. A. RAY, (OSCAR M. WOLFF, of counsel,) for plaintiff in error.

DELOS P. PHELPS, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Isabella L. Dodge died at her home in Chicago on June 19, 1905, presumably intestate. She left no children or descendant but left surviving her plaintiff in error, her husband, and various nephews and nieces, who have all been made defendants in error herein, as her heirs-at-law and next of kin. She died seized of real estate in Cook county

valued at about $5000 and left about $10,000 worth of personal property. Shortly after her death, upon the petition of plaintiff in error, Thomas H. Gault was appointed administrator of her estate. Thereafter, in October, 1906, the defendant in error St. Mary's Home for Children and Dispensary for the Poor of Chicago, Illinois, (hereinafter referred to as the St. Mary's Home,) filed its petition in the probate court of Cook county, alleging that Isabella L. Dodge died testate and that petitioner believed her last will and testament had been lost or destroyed. A copy of her alleged last will and testament was attached to the petition, and the prayer of the petition was that the will be restored and admitted to probate. The copy of the purported will attached to the petition, after providing for the payment of her debts and funeral expenses, bequeathed to plaintiff in error the sum of one dollar, and after making two other small bequests devised all the remainder and residue of her property, real and personal, to the St. Mary's Home. The probate court refused to admit the alleged will to probate, and an appeal was prayed and allowed to the circuit court of Cook county. Upon the hearing in the circuit court a jury was empaneled, and in answer to special interrogatories, and by its general verdict, found that Mrs. Dodge died leaving a last will and testament and that the same had been in the possession of plaintiff in error after her death. The circuit court made an order finding that Mrs. Dodge had died leaving a valid last will and testament in the words and figures of the copy attached to the petition of the St. Mary's Home, and ordered that the same be admitted to probate. This writ of error has been sued out to review that order.

It is first suggested that the circuit court erred in empaneling a jury and submitting to it the questions of fact involved, and plaintiff in error relies on *Moody* v. *Found,* 208 Ill. 78, and *Schofield* v. *Thomas,* 231 id. 114, in support of this proposition. It is sufficient to say in answer

to this contention that plaintiff in error not only did not object to the empaneling of a jury, but the record clearly discloses that he acquiesced therein, and he will not now be permitted to raise this question.

It is next urged that the entry of this order was erroneous for the reason that the St. Mary's Home failed to produce as witnesses both of the subscribing witnesses to the alleged will or to show a valid excuse for its failure to do so. Thomas H. Gault, who was called as a witness on behalf of the St. Mary's Home, testified that he was a practicing attorney and had known Mrs. Dodge for many years, and during all that time.had acted as attorney for both her and her former husband; that on the 7th or 8th of October, 1904, he was employed by Mrs. Dodge to draft her will, and he produced what he testified was a carbon copy of the same, being identical with the copy attached to the petition of the St. Mary's Home. According to his testimony this will was executed by Mrs. Dodge at her home in Chicago on the last named date and was witnessed by A. G. Bald and a Mr. Rogerson, an undertaker, who resided in that vicinity. Gault testified that after the instrument was executed and witnessed he folded it up and left it with Mrs. Dodge and never saw it afterwards. Bald was called as a witness and testified to the execution of the instrument. Rogerson was not called, and although it appeared from the testimony that he was still engaged in business as an undertaker in the city of Chicago, no explanation was offered as to why he was not produced as a witness, except that Gault testified that Rogerson was not in the city at the time of the trial. Whether he was within Cook county or the State of Illinois, or whether he was temporarily absent from the city or State, did not appear. Under section 2 of the Statute of Wills a party seeking to procure a will to be admitted to probate must produce the subscribing witnesses as witnesses in the probate court if they are still living and sane and are within the jurisdiction

of the court, and on appeal from an order of the probate court refusing to so admit the alleged will, the party seeking the probate is not relieved by the provisions of section 13 of the same act from the duty of submitting to the circuit court the testimony of the subscribing witnesses. *Thompson* v. *Owen,* 174 Ill. 229; *In re will of Barry,* 219 id. 391.

Defendants in error urge that plaintiff in error, by his conduct on the trial of the cause, waived the production of the testimony of the witness Rogerson. There is no foundation for this contention, but in any event plaintiff in error could not waive this requirement.

It is also contended that the production of the attesting witnesses was not necessary, as this was simply a proceeding in equity to establish the will, which, if successful, would be followed by the statutory proceeding to admit the will to probate. In this counsel is mistaken, as this was a petition to admit the will to probate, and differed from the ordinary application only in that here it was alleged that the will had been lost or destroyed after the death of the testatrix, and it was sought to have the will, when proven, admitted as in any other case. The St. Mary's Home was required, under its petition, to make the same proof as in any other case under the statute, and in addition, in order to overcome the legal presumption that the testatrix had revoked the will in her lifetime, to show that it was in existence at the time of her death and that it had been lost or destroyed since that time. *Beatty* v. *Clegg,* 214 Ill. 34.

In the light of a further consideration of the facts presented by this record this error becomes unimportant, as we are of the opinion that the petitioner below failed to establish the fact that Mrs. Dodge left a last will and testament. But one witness was produced by whom it was attempted to show that the will said to have been executed by Mrs. Dodge in October, 1904, was still in existence after her death. Shortly before the death of Mrs. Dodge, which

occurréd on the morning of June 19, 1905, plaintiff in error went to the home of Mrs. Alice Boyle, a neighbor and a woman who had frequently been employed by Mrs. Dodge, and summoned her to attend his wife. Mrs. Boyle was present when Mrs. Dodge died and remained until the undertaker's helper, an employee of said Rogerson, came to prepare the body for burial. In removing the clothing remaining upon the body, Mrs. Boyle and the undertaker discovered some packages of papers and two pocket-books beneath her underclothing. At the request of plaintiff in error Mrs. Boyle removed them and handed them to him. She said there were quite a few of these papers, and according to her testimony "there was a light kind of paper among them that I noticed particularly." It is this paper which it is now claimed was the instrument which Mrs. Dodge had executed in October, 1904, as her last will and testament. That is the only attempt at a description of this paper by the witness Mrs. Boyle except in response to the leading questions of counsel for the St. Mary's Home. Mrs. Boyle did not testify on the hearing in the circuit court. She had testified as a witness in the probate court, and by stipulation her testimony was read on the hearing in the circuit court. Gault testified before the circuit court that when the will had been executed and witnessed in 1904 he enclosed it in one of his regular office wrappers, which was of a light-green color. The carbon copy was also enclosed in the same kind of wrapper, so that when it was produced at the hearing in the probate court it was, according to the testimony of Gault, in every respect an exact *fac simile* of the original except that it had no endorsement on the outside. This copy had been exhibited to Mrs. Boyle during her examination in the probate court, and after her description of the paper which she had found and particularly noticed, as above referred to, her examination proceeded as follows:

Q. "Did you notice any paper of the shape of the one that I now show you?

A. "Yes.

Q. "And the color?

A. "Yes.

Q. "Will you please explain to the court whether there was any difference in the appearance of it, that you can describe to the court, from the one that I exhibit to you now? (Your honor, I am handing her Exhibit 3.) As to size?

A. "Yes.

Q. "Shape?

A. "Yes.

Q. "Color?

A. "Yes.

Q. "Was there any difference between the one you saw and this, that you can point out to the court,—any in color or shape?

A. "No. It was a lightish-green paper.

Q. "Was it like this?—(handing paper to witness.)

A. "Yes."

She then testified that she handed all the papers and the two pocket-books found on the body to plaintiff in error; that he put this particular paper in his pocket and laid some of the others on a table, and that she did not know what became of the paper of the light-green color.

This is the only testimony in the record which it is claimed directly tends to show that the alleged will was in existence after the death of Mrs. Dodge. To lend support to this testimony the St. Mary's Home produced a number of neighbors and friends of Mrs. Dodge as witnesses, and proved by them statements which she had made prior to her death and subsequent to October 7, 1904, to the effect that she had made a will whereby she had disinherited her husband and left him only the sum of one dollar, and various other statements of Mrs. Dodge to the effect that she

and her husband did not live happily together; that he had abused her, had been untrue to her, had threatened to kill her, and that she never wanted him to receive any of her property. It was also shown that immediately after the execution of the alleged will she filed a bill for divorce against plaintiff in error, charging him with adultery. The statements in reference to the will were all made by Mrs. Dodge more than three weeks prior to the time of her death, with one exception. One witness, who lived in the same house, testified that within a week of her death Mrs. Dodge told her she had left her husband but one dollar by her will. Plaintiff in error was at home during the two weeks prior to his wife's death but he had been away from home before that, and it was during his absence that all the statements testified to were made, with the one exception mentioned. On the other hand, the plaintiff in error testified that he had never seen any will which had been executed by his deceased wife; that there was no last will and testament among the papers taken from the body of Mrs. Dodge after her death, but that those papers consisted wholly of letters which he had written to her and various receipts, and that the pocket-books contained only a small amount of money. It was proven, also, that Mrs. Dodge, during her lifetime, rented a safety deposit box at the Merchants Safety Deposit Vaults and that the same was held by her at the time of her death; that plaintiff in error, in company with said Gault, had examined her safety deposit box immediately after her death and found therein all her valuable papers and securities and some jewelry, but found no last will and testament. Mary Mills, a neighbor of Mrs. Dodge and a friend of ten years' standing, testified that she saw her the day before she died and talked with her about her business affairs. In this conversation this witness testified that Mrs. Dodge said she had no will and did not have her business affairs settled; that plaintiff in error was present and Mrs. Dodge treated him very kindly,

spoke about having kept him up for two or three weeks waiting on her, and seemed to be solicitous for his welfare. Gault also testified that Mrs. Dodge wrote him on June 5, 1905, directing him to dismiss the bill for divorce, which he accordingly did on the following day.

This evidence was not sufficient to warrant the court in holding that Mrs. Dodge died leaving a last will and testament and that the same had been destroyed after her death. No contention is made here that Mrs. Dodge did not execute an instrument intended for her last will and testament in October, 1904. Gault testified that he placed a superscription upon the back of the instrument or envelope in which it was placed, to the effect that it was the last will and testament of Isabella L. Dodge. Mrs. Boyle did not testify that the paper she saw, and which it is now claimed was this same instrument, had any memorandum or endorsement upon it whatever. Where a last will and testament, after its execution, is retained by the testator and kept in his possession, and later, after his death, it cannot be found, the presumption is that the testator destroyed it *animo revocandi,* (*In re Page,* 118 Ill. 576; *Taylor* v. *Pegram,* 151 id. 106; *Boyle* v. *Boyle,* 158 id. 228; *Stetson* v. *Stetson,* 200 id. 601;) and it will not be presumed that it has been destroyed by any other person without his knowledge or authority, for that would be presuming a crime. (*Stetson* v. *Stetson, supra.*) To overcome this presumption, the St. Mary's Home contends that it has produced evidence of the existence of the will after the death of Mrs. Dodge. The testimony of Mrs. Boyle, with all the other evidence in the record which tends in any way to support it, does not rise to the dignity of such proof. Mrs. Boyle testified in the probate court that a year and a half before that time she had seen for a moment a paper of the same shape, size, color and general appearance of the one exhibited to her when on the witness stand and which was claimed to have been a *fac simile* of the alleged

will. If it was, in fact, the alleged will which Mrs. Boyle handed plaintiff in error at the time of the death of his wife, she could have observed nothing, according to the testimony of Gault, except the wrapper in which the instrument was enclosed, and the will, if established, must be established by the mere color of this wrapper. The bare wrapper itself, or a similar wrapper enclosing a different instrument, would have had the same appearance. Lost or destroyed wills cannot be established and the distribution of the estates of decedents determined upon such unsatisfactory evidence.

Counsel argues that it should be taken as a circumstance against plaintiff in error that he did not deny that he had mistreated his wife in the manner charged in her proven statements. Aside from the question of his competency to testify to any transaction occurring prior to the death of his wife, it must be borne in mind that these statements were all made out of his presence, and were not admitted for the purpose of proving any misconduct on his part, but for the sole purpose of showing his wife's attitude of mind towards him at the time the statements were made. No actual misconduct on the part of the plaintiff in error was proven, except that two of the persons who lived in the same house testified they had overheard him quarreling with his wife.

The proof in support of the petition was not sufficient to overcome the presumption that Mrs. Dodge destroyed the instrument during her lifetime for the purpose of canceling and revoking it, and to establish the fact that it was in existence after her death and was thereafter destroyed by plaintiff in error.

The order of the circuit court admitting the alleged will to probate is reversed.          *Order reversed.*