(No. 12415.—Reversed and remanded.)

LEO MAYER, Appellee, *vs.* MARGARET SCHRENKLER *et al.* Appellants.

*Opinion filed December 18, 1918—Rehearing denied Feb. 7, 1919.*

1. WILLS—*testimony of the subscribing witnesses as to mental capacity must be presented.* Under section 2 of the Wills act, if the subscribing witnesses to a will are alive, sane and within the jurisdiction of the court, at least two of them must be required to testify as to the compliance with the requirements of the statute for executing the will and give their opinion as to the mental capacity of the testator, whether the proceeding to probate the will is in the county court or circuit court.

2. SAME—*parties resisting probate are limited to subscribing witnesses on question of mental capacity.* The rule that on appeal to the circuit court from an order refusing probate of a will the proponents may introduce general evidence as to the mental condition of the testator in addition to that of the subscribing witnesses, but that the parties resisting probate are confined, on that question, to the testimony of the subscribing witnesses alone, was not changed by the amendment of section 13 of the Wills act in 1909, which merely extended the right of the proponents to introduce general evidence on an appeal from an order allowing probate. (Contrary expression in *Speer* v. *Iosenhans,* 274 Ill. 237, overruled.)

APPEAL from the Circuit Court of Stephenson county; the Hon. ROBERT K. WELSH, Judge, presiding.

ROBERT B. MITCHELL, for appellants.

DOUGLAS PATTISON, and ELWYN R. SHAW, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Stephenson county admitting to probate a certain instrument as the last will and testament of John Schrenkler, deceased. The county court of that county refused to probate the will, apparently on the ground of failure of one of the subscribing witnesses to testify because of sickness, and an appeal was taken to the circuit court. In the circuit court the trial was had before Judge Robert K. Welsh without a jury, who entered the order allowing the will to be probated. From that order of the circuit court allowing probate those resisting the same have appealed to this court.

John Schrenkler at the time he made this will was about fifty-four years of age and resided in Freeport, in said county. The will was signed and attested August 10, 1914, and he died in September, 1915. He lived at the time of his death with his brothers and sisters in Freeport, where he had passed much of his life. The testimony tends to show that during most of his life he had been a race-track book-maker and betting commissioner, apparently having a large acquaintance and business connection with those most actively engaged in that line of work. He was frequently called by his associates and race-track acquaintances John Howard. After the payment of the debts the will gave to his mother the residence and premises occupied by her as a homestead in Freeport, and then divided fifteen shares of preferred stock and fifty shares of common stock of the Harford Agricultural Breeders' Association among Mrs. Samuel Hildreth, Mrs. Leo Mayer and Mrs. J. M. Murphy, all of whom were residents of New York State. All the rest of his property he gave to Leo Mayer, of New York City, and appointed Jacob Weiss, his brother-in-law, of Freeport, as executor. The association in which he owned this stock apparently operates a race-track at Havre de Grace, Maryland, in which the testator was interested. The legatees

of said stock were not relatives of Schrenkler but were the wives of close friends, who, as the testimony shows he stated, had been kind to him since he became ill. He had several brothers and sisters in Freeport, with whom he lived at the time he made the will and at whose house he died, but they were not mentioned in the will and are the appellants here. Their counsel contends in his brief that the house which he provided in the will should go to his mother was not his to give. He states that that fact does not appear in the record, because the witnesses who could prove it were not permitted to testify on the trial in the circuit court. The testator had been seriously ill for some time before his death and had spent several months for treatment at Hot Springs, Arkansas, and at New Richmond, Wisconsin. The testimony tends to show that the disease of which he finally died was paresis, with which he had been afflicted for some time before his death, and not long before he made the will he had suffered a slight stroke of apoplexy.

The will was witnessed by Judge W. N. Cronkrite, a Freeport attorney who drafted it, and Frank M. Keck, a Freeport business man who lived next door to the house where the testator was then stopping. The attesting clause does not state that the witnesses believed the testator was of sound mind and memory but contains the other requisites for properly attesting a will. The will itself in the first clause stated that the testator was of sound mind and memory. Keck, one of the witnesses, testified on the hearing in the circuit court that the requisites of the law were gone through with, in attesting the will, by the testator and himself and Judge Cronkrite, but he was not asked to testify as to the mental capacity of the testator. Judge Cronkrite, who was ill at the time of the hearing in the circuit court and apparently because of illness did not testify in the county court, gave his testimony by deposition on the hearing in the circuit court. In this deposition he stated that he drew the will as an attorney from the informa-

tion received from Schrenkler; that he had known him for years, they having been schoolmates together; that the will was signed by the testator in the presence of himself and Keck and that they signed in his presence, but that in witness' opinion Schrenkler was not capable of transacting ordinary business when he signed the will. He gave as his reason for thus acting as a witness in attesting the will when his views as to the testator's mental capacity were such as he testified to, that he did not have the heart to tell his old friend that he thought him too sick to make a will. Judge Cronkrite also testified that he had seen the testator quite frequently and talked with him several times when they were both receiving treatment at Hot Springs. Apparently this was some time after the will was executed at Freeport.

In addition to the testimony of the two subscribing witnesses, the proponents of the will, on the hearing in the circuit court, offered a number of depositions taken at various places by those who had known Schrenkler. Some eight of these witnesses resided at Hot Springs, five in Chicago, one in New York and five in New Richmond. They testified that in their opinion Schrenkler was of sound mind and memory. Many of them had known him for years, and the majority, if not all of them, saw him after he made the will as well as before. A few of them testified that their acquaintance had not been such as to enable them to judge particularly as to his mental capacity as they only met him when he came into their business establishments at the health resort and they did not take particular note of his mental condition, but these also stated that they had not noticed anything in his conduct that made them doubt that he was of sound mind and memory. Several of his long-time friends, including William A. Pinkerton, testified that Schrenkler was as sound, mentally, as he had been for several years previous to the time he executed the will; that they thought he was perfectly capable of transacting

ordinary business even after the paralytic stroke he suffered, Pinkerton stating that he seemed to have a very good idea of his business ventures, particularly that at Havre de Grace, and that his memory was remarkably good as to the receipts and expenditures and other details of the business of that race-track.

It is earnestly argued by counsel for appellants that the circuit court erred in refusing to require the proponent of the will to examine the attesting witness Keck as to the mental condition of the testator at the time the will was executed. He also argues just as earnestly that the circuit court erred in refusing to allow him to produce the testimony of witnesses on the trial in the circuit court as to the mental capacity of the testator when the will was made.

As to the first point, counsel for appellee insist that while the statute on wills, especially sections 2 and 13, requires that two of the witnesses who attested the will be produced in the county court or in the circuit court at the time the question of probating the will is heard, they are not required to examine these two attesting witnesses as to all the details required in order to justify the probating of the will; that counsel for appellants has not shown in any way where their rights were prejudiced by the failure to examine Keck as to the mental condition of the testator at the time the will was executed; that Keck was present and testified as to the other details, and that if counsel for appellants had desired to have his testimony on the question of mental capacity he could have examined him on that question; that by remaining silent, if any error was committed on this question, he participated in such error and cannot now complain.

Section 2 of the chapter on wills provides, among other things, that two of the attesting witnesses must declare "on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence,

or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same." (Hurd's Stat. 1917, p. 2966.) Section 13 of said act, which gives the requirements as to the hearing on the probate in the circuit court, does not particularly specify as to the requirements of the testimony of the attesting witnesses, but this court has more than once stated that such requirements in the circuit court are the same as they are in the probate court. In *Hill* v. *Kehr*, 228 Ill. 204, this court said (p. 206) : "To authorize a county court to admit a will to probate, proof of these facts must be made by the subscribing witnesses, at least two of whom must declare, on oath or affirmation, that they were present and saw the testator or testatrix sign the will, testament or codicil in their presence or acknowledged the same to be his or her act or deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same. [Citing authorities.] On appeal to the circuit court from an order of the county court admitting a will to probate the requirements are exactly the same." In *In re will of Barry*, 219 Ill. 391, this court, in discussing this same question, said on page 392, that while the proponents "are required to produce the subscribing witnesses, if alive and sane and within the jurisdiction of the court, they are not limited to or necessarily bound by the testimony of the subscribing witnesses." In *St. Mary's Home for Children* v. *Dodge*, 257 Ill. 518, this court said (p. 521) : "Under section 2 of the Statute of Wills a party seeking to procure a will to be admitted to probate must produce the subscribing witnesses as witnesses in the probate court if they are still living and sane and are within the jurisdiction of the court, and on appeal from an order of the probate court refusing to so admit the alleged will the party seeking the probate is not relieved by the provisions of section 13 of the

same act from the duty .of submitting to the circuit court the testimony of the subscribing witnesses.—*Thompson* v. *Owen,* 174 Ill. 229; *In re will of Barry, supra."* The same rule is, in effect, laid down in *Stone* v. *Stone,* 281 Ill. 474, and cases there cited.

From these various decisions and the authorities cited therein it is clear that this court has held in a long line of decisions that it is the duty of the proponents of a will, on the hearing to probate the same in the county court under section 2, to present the testimony of at least two attesting witnesses as to the requirements of the statute being complied with in executing the will, and also that they believed the testator to be of sound mind and memory. It is also just as manifest from these decisions that when the hearing on the probating of a will is in the circuit court, the testimony of at least two credible witnesses who attested the will shall under the same conditions be presented on all these questions. The trial court should therefore have required the proponents of the will to have presented the testimony of the attesting witness Keck as to the mental condition of the testator at the time the will was executed. The fact that one or both of the witnesses swear adversely to the proponents in the circuit court will not necessarily prevent the will being probated if the other proof justifies, but the testimony of two of the subscribing witnesses on the question of mental capacity must be presented.

The second point urged as error by counsel for appellants requires for an understanding a brief review of the legislation on the question and the decisions of the courts construing the same.

It appears that the appeal to the circuit court from the order of the county court refusing to probate a will was first allowed by legislative enactment in this State by the statute of 1833. In construing that statute this court held that neither side on an appeal could establish or disprove the testator's mental condition by other than the attesting

witnesses. (*Walker* v. *Walker,* 2 Scam. 291.) In 1845 the statute was amended so that when probate of a will had been refused by the county court it allowed the proponents, on appeal to the circuit court, to introduce other witnesses in addition to the attesting witnesses, and made the evidence of other witnesses competent to establish a will in chancery as to the testator's mental condition. The previous rule, however, was still in force in all other respects as to the testimony that could be heard in the circuit court. (*Andrews* v. *Black,* 43 Ill. 256; *Weld* v. *Sweeney,* 85 id. 50.) The statute of 1845 on this question was re-enacted in the same language in 1874. Under the acts of 1845 and 1874, on appeal to the circuit court from the order of the county court refusing to probate the will the proponent had a right to go into general evidence as to the state of mind of the testator in addition to the testimony of the attesting witnesses, but those resisting probate were still restricted to the testimony of the subscribing witnesses and that alone. (*Heirs of Critz* v. *Pierce,* 106 Ill. 167; *Masonic Orphan's Home* v. *Gracy,* 190 id. 95; *Stuke* v. *Glaser,* 223 id. 316.) A full discussion of these changes is found in the various decisions hereinbefore cited on this question. A review of previous decisions and legislation is found in *Heirs of Critz* v. *Pierce, supra.* The court in that case said (p. 173): "There are several considerations which repel the idea the legislature intended by this act to authorize parties resisting the probate to avail themselves of its provisions, two of which appear on the face of the act itself. First, it will be perceived the right to go into general evidence on such an appeal is expressly limited to those 'seeking probate' of the will. In the second place, with the view of rebutting the presumption that those interested in defeating the will might in any manner be concluded or prejudiced by permitting the proponents of the will to thus go into general evidence in its support, it was expressly provided that its admission to probate upon such general evidence should not affect the

former's right to contest the validity of the will by bill in chancery, as then provided by law. If it had been intended that upon such appeal both parties should go into general evidence upon the subject, what object or purpose could have been subserved by retaining the remedy by bill? Could it have been intended that the parties resisting the will should have the benefit of a full trial on the merits, and if defeated then turn around and bring their bill in chancery and re-litigate the matter again upon the merits? Certainly not; yet such would be the case if the view insisted on is the correct one. But, it may be asked, if one resisting a will is a mere looker-on upon such an appeal, why is he permitted to become a party to the proceeding at all? He is not bound to, yet to avoid being driven to his bill in chancery he is permitted by the statute to do so. He has the right to appear and see the proponent of the will, by proper and legitimate testimony, makes out a *prima facie* case warranting the admission of the alleged will to probate. When this has been done and he is unable to produce satisfactory evidence of 'fraud, compulsion or other improper conduct' sufficient to invalidate or destroy such will, and it does not otherwise appear from the evidence, he has done all the law permits him to do in that proceeding. If he has countervailing testimony upon the testator's sanity or capacity to make a will he must resort to his bill in chancery. [Citing authorities.] It is claimed that *Dickie* v. *Carter,* 42 Ill. 376, and *Reynolds* v. *Adams,* 90 id. 134, are inconsistent with the view here taken. This is a misapprehension. In the latter case the will was admitted to probate in both the probate and circuit courts, and hence the question could not have arisen. It is true that in the *Carter case* general evidence touching the testator's sanity was gone into on both sides, but no question as to its competency was made, and hence this court did not and could not have passed upon the question. Here the question is directly presented for determination. We have been referred to no

case, and know of none, laying down a different rule from the one here announced. The appellants are by no means concluded by the conclusion reached here or in the circuit court. They may to-morrow, or at any time within the limitation of three years, by bill in chancery contest the validity of said will, in which proceeding they will be permitted to introduce any legitimate testimony tending to show the testator was not of sound mind at the time of executing the same, or any other matter or thing which will establish the fact that the instrument in question is not the will of Peter Critz, Sr."

In 1909 section 13 of the act on wills was amended so as to read as follows: "When the probate of any will and testament shall have been (allowed or) refused by any county (or probate) court, and an appeal shall have been taken from the order or decision of such court, (allowing or) refusing to admit such will to probate, into the circuit court of the proper county, as provided by law, it shall be lawful for the party seeking probate of such will to support the same, on hearing in such circuit court, by any evidence competent to establish a will in chancery; and in case probate of such will shall be allowed on such appeal, it shall be admitted to probate, liable, however, to be subsequently contested, as provided in the case of wills admitted to probate in the first instance." (Hurd's Stat. 1917, p. 2969.) The statute before 1909 was exactly the same, excepting the words in parentheses, which by said amendment were added to the old act. (See Hurd's Stat. 1908, sec. 13, p. 2194.) By the amendment of 1909 the proponent is given further rights,—that is, another exception is made in his favor: that he can introduce evidence in the circuit court when the will is allowed probate in the county court the same as he can when the probate is denied in the county court.

But it is argued by counsel for appellee that the old rules as to the admission of evidence laid down in the cases

cited, and particularly the reasoning in the *Critz case, supra,* still apply to the contestants; that the proponent, under the amended act, on appeal to the circuit court may offer additional witnesses whether the will has been probated in the county court or has been refused probate, but that the contestant on the hearing on appeal in the circuit court is still restricted to the testimony of the attesting witnesses. Counsel for appellants seems to concede that under the decisions already quoted that might be the proper result, but he contends that under the decision of this court in *Speer v. Josenhans,* 274 Ill. 237, this court held that when the proponents offer other testimony than the subscribing witnesses on the question of the sanity of the testator the contestants then have the privilege, also, of introducing additional witnesses on that question. This last decision is the only one that has been rendered by this court since the amendment of 1909 to section 13. In that case this court stated, after discussing the question (p. 241): "Under that statute it was uniformly held that in case a will was admitted to probate in the county court, both parties, on appeal, were limited, so far as the execution of the will and testamentary capacity were concerned, to testimony of the subscribing witnesses, with the privilege to contestants to offer proof of fraud, compulsion or other improper conduct sufficient to invalidate the instrument as a will. [Citing authorities.] In order to permit the proponents of a will which has been admitted to probate by the county court to sustain the same, on appeal, by testimony other than that of subscribing witnesses, the statute was amended in 1909 so as to give that right whether probate was allowed or refused in the county court. The amendment does not extend the right of a contestant unless the proponent of a will shall attempt to support the same by evidence competent to establish a will in chancery, and thereby present the issue whether the will is valid under such evidence, when that issue may be tried. It has always been considered that the General Assembly

did not intend that contestants should have the privilege, on their own motion, of trying the same question twice,— first on an appeal in the circuit court and again on a bill in chancery,—a right expressly reserved in the same section of the statute as amended, * * * while in this case the will had been admitted to probate and there was no attempt to establish the will except by the subscribing witnesses."

Under the reasoning in all the former decisions of this court before the last amendment there can be no escape from the conclusion that this court has held that the right of the contestant, on the hearing to probate, is still limited to the testimony of the attesting witnesses as to the mental condition of the testator. The only change in the amendment of section 13 in 1909, as heretofore stated, was to give to the proponents the right to offer additional testimony as to the mental condition of the testator on appeal in the circuit court when the probate of the will was allowed in the county court, the same as they had been allowed when the will was denied probate in the county court. This being the only change by the amendment of 1909, it would seem that the limitation on the right of contestants to offer additional testimony on appeal in the circuit court must be held the same after this amendment as it was before the amendment was made. Whatever was said in *Speer* v. *Josenhans, supra,* that is in conflict with this conclusion is here overruled. The circuit court therefore rightly refused to admit the testimony offered by appellants in that court with reference to the mental condition of the testator.

For the error in failing to require the proponent to present the testimony of attesting witness Keck on the question of the testator's mental condition, the order and decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.     *Reversed and remanded.*