In re ESTATE OF JOHN G. PHILLIPS, ) Appeal from the

) Circuit Court of

Deceased, 
 ) Cook County.
 

) 

(John Klebba and Theresa Proietto, ) 

) No.  01 P 8475

Appellants, )

)

v. )

)

Michael O’Connor, Administrator, ) Honorable

) Robert E. Cusack,

Appellee). ) Judge Presiding.

PRESIDING JUSTICE REID delivered the opinion of the court:

The appellant, John Klebba
(footnote: 1), appeals the trial court’s order that granted summary judgment on behalf of Michael O’Connor, the administrator of John Phillips’ estate.  On appeal, Klebba argues that: (1) the trial court improperly applied the Dead-Man’s Act 
(735 ILCS 5/8-201 (West 2002))
 to bar his testimony and not admit a will to probate
 that Phillips had allegedly executed in 1987, and 
(2)
 section 8-501 of the Illinois Code of Civil Procedure (735 ILCS 5/8-501 (West 2002))
 is unconstitutional.  For the reasons that follow, we affirm.

BACKGROUND

Phillips died in August 2001 and his two sons, Stephen and John, petitioned to have his will, dated March 31, 1965 (the 1965 Will), admitted to probate.  The relevant portions of the 1965 Will follow:

“
I give, devise and bequeath
 the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS to THERESA PROIETTO; the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS to SUNDAE KLEBBA; the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS to my parents collectively or the survivor of them who may be living at the time of my death; In addition to any proceeds from any insurance policies which may be in effect at my death, the remainder of all my assets real or personal of whatever nature or wherever situated to my children, JOHN C. PHILLIPS and STEVEN D. PHILLIPS, in equal shares, to be given to them at the rate of THREE HUNDRED ($300.00) DOLLARS per month each until the age of twenty-one (21), at which time they will have the corpus or the remainder to them in full.  I hereby direct my executor to furnish to them, whenever and wherever necessary, any and all advancements and amounts necessary for school expenditures and including but not limited to tuition, living and other reasonable amounts for their college education.  I hereby nominate and appoint FRANK FRIEDMAN as the guardian of the estate of such of my children who shall not yet have attained their majority at the time of my death.  In the event that FRANK  FRIEDMAN cannot serve by reason of death or infirmity, then I hereby nominate and appoint THERESA PROIETTO as said guardian.”  (Emphasis in original.)

Frank Friedman, who is deceased, was nominated as the executor of the estate.  On November 8, 2001, letters of office issued to Michael O’Connor, whom the sons nominated to act as independent administrator.

On February 19, 2002, Klebba filed a petition to admit a lost or destroyed will to probate.  In his petition, Klebba asserted that on March 12, 1987, Phillips duly executed another will (the 1987 Will), a signed copy of which he appended to his petition.  Klebba maintained that the original will was no longer accessible because it was last seen when it was sent to a bank for safekeeping and that, subsequently, the files and records of the bank were seized by the federal government.  

After revoking all wills and codicils heretofore made by Phillips, irrespective of the date made, the 1987 Will provided the following bequests:

“I give, devise and bequeath, after the payment of all taxes, the sums as follows: to John Klebba - $400,000.00; to Joseph Proietto - $300,000.00; Theresa Proietto - $250,000.00; to each of my parents (if alive at my death) $100,000.00; Mary Jo Toscano - $150,000.00; Jean Wiegel - $100,000.00; to my sons John and Stephen the remainder equally subject to the following.  Because my son John has not matured or shown adequate evidence of accepting life’s responsibility and to avoid a spending spree, I decree that his share shall be in trust under the [surveillance] of my sister Theresa Proietto, who shall be the trustee.  Under her trusteeship, she will give John $750 a month for three years; at the expiration of three years, if she deems that he has implemented responsible and industrious habits, he shall receive his share.  In the event my son is not deemed as having reasonably learned habits of industry of self-sufficiency, his share shall at the expiration of three years be distributed to my son Stephen and the other beneficiaries in the same proportion as they would have received but for John’s share.  My sister shall not unreasonably reach the decision to the detriment of my son John, whom I love very much and who has unfortunately not matured like my son Steve who will probably exceed and surpass me as a lawyer.”

Along with the petition, Klebba submitted an affidavit.  In his affidavit, Klebba explained the origin of the 1987 Will and what happened to it after it was executed.  The following are the  relevant portions of Klebba’s affidavit:

“4.  From November 1971 to November 1981, I was employed in my uncle’s law office in various capacities, such as office boy, file clerk, paralegal, bookkeeper and office manager.

5.  Upon my licensure as an attorney in November 1981, I was an attorney employed first by John G. Phillips, Ltd. and later by its corporate successor, John G. Phillips & Associates, until February 1995.  During that time, I was present in the office Monday through Saturday and often spoke with my uncle on the phone in the evenings and on Sundays.

***

7.  Late one morning in March 1987, I walked into John’s office and saw two of our secretaries, Maria Zohfeld and Betsy Ruley, gathered around John’s desk with him.  They had apparently just signed some document.

8.  John took up the document and told me, ‘Come with me.’

9.  I followed John to the photocopy/supply room where he placed the document on the photocopy machine and made more than one copy of the document.

10.  While the photostat machine was working, John reached into one of the supply cabinets and pulled out a large manila envelope.

***

12.  John took the original document and the copies from the photostat machine.  He folded one of the copies in quarters.  I saw that the original document bore the title ‘Last Will and Testament.’  The original document was identical to the copy that John gave me as described in Paragraph 13, below.

13.  John gave me the folded copy of the document and told me to ‘keep this someplace safe, outside the office.’

14.  Next, he took the original of the document and placed it in the manila envelop[e] he had taken from the cabinet and said, ‘I’m going to send this to Alex at the bank for safekeeping.’

15.  I understood this to mean that John was sending the original document to Alex Vercillo who, at the time, was either a vice-president or the president of the Cosmopolitan Bank at 801 N. Clark Street in Chicago.

16.  I saw John write Alex Vercillo’s name and the word ‘Personal’ on the envelop[e] in ink.  He closed and sealed the envelop[e].

17.  John and I then walked up to the office’s receptionist desk and John placed the envelop[e] in the spot where ‘pick-ups’ for the bank were kept.

18.  At that time, John, the corporation and many of the employees maintained accounts at the Cosmopolitan Bank.

19.  As an accommodation to John, the bank made a messenger available to the office to facilitate the account-holder/employee’s banking business.

20.  For a pick-up, the account-holder/employee would fill out the deposit form, or other bank form as desired, place it in an envelop[e], address the envelop to the individual at the bank who was to receive it, seal the envelop and place it on the receptionist’s desk.

***

23.  When John placed the manila envelop[e] on the receptionist’s desk that morning, there was already one or more envelop[e]s present there.

24.  After John placed the envelop[e] on the receptionist’s desk that morning, I went back to my office and placed the folded copy he had given me in my valise.

25.  In the early afternoon, I passed the receptionist’s desk and saw that the place where the bank messenger’s pick-ups had been was empty.

***

33.  The document attached as Exhibit A to this affidavit is a copy of the copy of the will that John gave me in 1987.  I kept my copy in my home and found it on the Sunday after John was buried in 2001.”

On March 19, 2002, Phillips’ sons filed a motion to dismiss Klebba’s petition pursuant to section 2-615 of the Illinois Code of Civil Procedure.  735 ILCS 5/2-615 (West 2002).  It appears that the trial court never ruled on this motion.

On April 25, 2002, Jean Wiegel filed a two-count claim against the Phillips estate in the amount of $110,000.  In the claim, Wiegel asserted that she and Phillips met after his divorce and that during his lifetime, they “enjoyed a long, close and loving relationship.”  Count I alleged that after her mother died, Wiegel entrusted Phillips to hold $10,000 for her as a convenience.  Wiegel alleged that at the time of his death, Phillips was still holding this money.  She sought to have it returned.  Count II alleged that Phillips had made an oral promise that upon his death he would “leave her a substantial benefit in his Last Will.”  It was alleged that “The Will dated March 12, 1987 is a written acknowledgment by [Phillips] of the contract [Phillips and Wiegel] had, that if [Wiegel] changed her life and assisted him emotionally and personally in his business and personal life, [Phillips] would make a gift to her of part of his estate assets.”  Consequently, Wiegel sought to have the trial court “confirm that the Will of John G. Phillips dated March 12, 1987 is his Last Will and Testament, is a written acknowledgment of the contract [Phillips and Wiegel] had, and confirm that the legacy of $100,000 specified in the Will is [Wiegel’s], as was [Phillips’] will and intention.”

On June 4, 2002, O’Connor filed an answer to Wiegel’s claim denying the existence of the 1987 Will and asking the trial court to deny the claim in its entirety.  

Thereafter, discovery was completed, which included the deposition of Betsy S. Ruley, a former legal secretary at Phillips’ firm.  The relevant portions of Ruley’s testimony follows
(footnote: 2):

“Q.  Okay.  What happened after John Phillips had signed Exhibit 3, after you had signed Exhibit 3, and after Ms. Zohfeld had signed Exhibit 3?

A.  Maria and I walked out of the office.

Q.  When you walked out of the office, where was the original of Exhibit 3 that at this point bore Mr. Phillips’ signature, your signature and Ms. Zohfeld’s signature?  Where was that document when you last saw it?

A.  John had it.

Q.  Okay.  Was it in his hand, on the desk?  Do you remember where it was more specifically than John had it?

A.  I believe that after it was signed either I or Maria handed it back to him.

Q.  Okay.  So that the last time that you saw this document it was in John Phillips’ hand.

A.  Yes.

Q.  When you turned and walked out of the office, the last that you had seen of Exhibit 3 was in John Phillips’ hand, is that correct?

A.  That’s correct.

Q.  Okay.  Did Mr. Phillips ever talk to you ever after that date about his, about Exhibit 3 at all?

A.  No.

Q.  Did Mr. Phillips ever tell you what he had done with the original of Exhibit 3?

A.  No.

Q.  Did Mr. Phillips either before or after this date ever talk to you at all about his wills?

A.  No.

Q.  This will or any other wills?

A.  No.”

On June 3, 2003, O’Connor filed a motion for summary judgment with regard to Klebba’s petition on the grounds that the petition was insufficient because it could not be supported by Klebba’s affidavit, which was barred by the Dead-Man’s Act.  After a hearing, on September 29, 2003, the trial court granted O’Connor’s motion for summary judgment.  

On October 23, 2003, O’Connor served Klebba with notice of a motion to dismiss the supplemental proceedings brought by Wiegal.  On October 28, 2003, Klebba filed a “combined motion to reconsider order granting summary judgment to administrator and objection to administrator’s motion to dismiss supplemental proceedings.”  On November 4, 2003, O’Connor filed a motion to dismiss the supplemental proceeding with prejudice as a result of a settlement that the estate and Wiegel had reached.  

Consequently, on December 4, 2003, the trial court dismissed Wiegel’s claim with prejudice and denied Klebba’s motion to reconsider.  Klebba then timely filed his notice of appeal on December 11, 2003.

ANALYSIS

I

This court reviews a trial court's grant of summary judgment 
de
 
novo
.  
Morris v. Margulis
,
 197 Ill. 2d 28, 35 (2001).  Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005 (West 2002); 
Morris
,
 197 Ill. 2d at 35.  A trial court is required to construe the record against the moving party and may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt. 
 
People ex rel. Department of Labor v. MCC Home Health Care, Inc.
,
 339 Ill. App. 3d 10, 19 (2003).  If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted.  
MCC Home Health Care
,
 339 Ill. App. 3d at 19.

“The law is well established regarding lost or missing wills.  It is established:

‘Where a last will and testament, after its execution, is retained by the testator and cannot be found upon his death, it is the well-settled rule of this and of the majority of jurisdictions that it will be presumed to have been destroyed by him 
animo
 
revocandi
.
 [Citations.]  The same cases establish that the presumption is subject to being rebutted by circumstances which tend to show a contrary conclusion, and that the burden is on one seeking to probate such a will to prove that it was unrevoked at the testator's death.’ (
In re Estate of Moos
 (1953), 414 Ill. 54, 57, 110 N.E.2d 194, 195, 
In re Estate of Millsap
 (1979), 75 Ill. 2d 247, 250, 388 N.E.2d 374, 375-77.  (See also 
In re Estate of Weir
 (1983), 120 Ill. App. 3d 18, 20, 458 N.E.2d 134, 136, 
In re Estate of Netherton
 (1978), 62 Ill. App. 3d 55, 57-58, 378 N.E.2d 800, 802.)  Factors to be considered in addressing the rebuttal of the presumption include evidence as to statements from the testator that he did not intend to revoke the will, evidence that he entertained a kind and loving attitude toward the proposed beneficiary under the will up to the time of death, and evidence of other individuals’ access to the will prior to death.  (See 
Moos
,
 414 Ill. 54, 110 N.E. 2d 194; 
In re Estate of Morgan
 (1945), 389 Ill. 484, 59 N.E.2d 800; 
Holler v. Holler
 (1921), 298 Ill. 418, 131 N.E. 663; 
In re Estate of Deskins
 (1984), 128 Ill. App. 3d 942, 471 N.E.2d 1018; 
Jackson v. Jackson
 (1971), 132 Ill. App. 2d 66, 268 N.E.2d 62.)  In cases where the issue is raised whether some person has unlawfully destroyed a missing will, however, it will not be presumed that a missing will has been destroyed by any other person, without the knowledge of or authority of the testator, although such person may have had the motive and the opportunity, as that would be presuming a crime. 
 
Moos
,
 414 Ill. at 60, 110 N.E.2d at 197; 
Holler
,
 298 Ill. at 432, 131 N.E. 669; 
St. Mary's Home for Children v. Dodge
 (1913), 257 Ill. 518, 526, 101 N.E. 46, 49.

Our supreme court has noted that because the evidence with respect to any rebuttal will vary from case to case, other cases ‘constitute little assistance in [making] the determination’ whether the presumption has been overcome.  (
Morgan
,
 389 Ill. at 487, 59 N.E.2d at 801; see also 
Moos
,
 414 Ill. at 60-61, 110 N.E.2d at 197.)  We therefore determine the instant case on its own facts, in light of the above rules.”  
In re Estate of Strong
, 194 Ill. App. 3d 219, 226 (1990).

The relevant portions of the Dead-Man’s Act state:

“In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event.”  735 ILCS 5/8-201(a)(West 2002).

Initially, Klebba argues that a question of fact exists as to whether Phillips revoked his 1987 Will.  In particular,  Klebba contends that there is no factual foundation for the trial court’s presumption that Phillips retained his 1987 Will.  It is Klebba’s contention that “the Administrator sought to invoke the legal presumption that a will, 
which was in the testator’s possession at the time of his death
 and which cannot be found after his death is 
presumed
 to have been destroyed by him during his lifetime with the intent to revoke.”  (Emphasis in original.)

Klebba argues that nothing established the predicate fact that Phillips had indeed retained the 1987 Will and that it was in his possession at the time of his death.  Klebba acknowledges Ruley’s testimony but argues that it does not prove that Phillips retained the will.  Klebba points out the Ruley never testified that Phillips retained the will.  Klebba asserts that Ruley only testified that she signed the will, handed it back to Phillips, and then walked out of the room.  Phillips asserts that Ruley had no knowledge as to what Phillips did with the will when she left the room.  Klebba argues that Ruley handing the will back to Phillips does not equate with a finding that Phillips retained or kept the will in his possession.

In deciding this issue, we find that 
In re Moos Estate
, 414 Ill. 54 (1953), is instructive.  In 
Moos
, after the testator died the will could not be found.  The executrix of the estate filed a petition alleging that the original will had been in existence at testator’s death, that it was never revoked by him, and that it was lost or destroyed; and she prayed for the admission to probate of a copy of the original  will.  The executrix’s petition was denied, and the appellate court made a finding that the original will had been revoked by the decedent.  

The facts showed that at the time that the will was executed, the decedent was a patient in a hospital and was apprehensive about a forthcoming operation.  The will was executed in his hospital room with an attorney and another patient serving as witnesses.  Thereafter, the original will was left with the decedent at the hospital, and a copy was taken by the attorney.  There was no evidence as to what happened with the will after it was executed.  There was no evidence that the will was ever seen at a later date or that it was ever mentioned by the decedent.  The testator died 11 months after the will was executed.

The 
Moos
 court considered evidence that the will may have been destroyed by an interested party.  However, the court found the evidence to be unpersuasive.  
Moos
, 414 Ill. at 60.   The court then found that evidence that the testator maintained an attitude of friendship, confidence and reliance toward the proponents up to the time of his death, standing alone, was insufficient to show an unlikelihood that the testator would revoke his will.  
Moos
, 414 Ill. at 61.

The court then considered the fact that the testator never again made any comments about the will either to a beneficiary or a friend.  The court then considered the circumstances under which the will was executed, 
i.e.
, while in the hospital before a surgical procedure and contemplating his possible death.  Thereafter, the 
Moos
 court determined that there was insufficient evidence to rebut the presumption that the testator had revoked the will.  
Moos
, 414 Ill. at 62.

Here, the trial court properly determined that the estate was entitled to a presumption that the 1987 Will had been revoked.  It is undisputed that the original 1987 Will could not be found after Phillips died.  The only competent evidence concerning the custody of the 1987 Will was offered by Ruley, who last saw it in Phillips’ possession.  Accordingly, as in 
Moos
, the prerequisites for the presumption of revocation (
i.e.
, that the original will was last in the possession of the testator and that the original could not be located after the testator’s death) have been fulfilled.  

Next, Klebba argues that Ruley’s testimony opened the door to his affidavit being accepted for consideration under section 8-201(a) of the Dead-Man’s Act.  Under section 8-201(a) of the Dead-Man’s Act, if any person testifies on behalf of the representative to any conversation with the deceased or any event that took place in the presence of the deceased, any adverse party may testify concerning the same conversation or event.  Klebba contends that the application of this exception compels the conclusion that he should have been allowed to testify to the event at issue, whether Phillips retained the 1987 Will.   

Klebba maintains that Ruley’s testimony opened the door to him testifying as to what happened immediately upon Ruley’s handing the 1987 Will to Phillips.  Klebba asserts that his testimony was part and parcel to the very same event, the signing and disposition of the 1987 Will.

Klebba argues that his testimony cannot be said to relate to another event.  Klebba complains that his testimony did not relate to a conversation held hours, days, or weeks later.  Instead, he maintains that he only attempted to testify that right after Ruley handed the will back to Phillips, Phillips took him to the photocopier, made three copies of the will, placed the original in a manila envelope addressed to Alex Vercillo, gave a copy to himself with instructions to keep it in a safe place, and then deposited the envelope with the original in the bank messenger’s slot in his reception area.

The trial court properly determined that Ruley’s testimony did not open the door to the consideration of Klebba’s testimony under section 8-201(a) of the Dead-Man’s Act.  Ruley’s testimony and Klebba’s testimony concern two different events, and therefore, Klebba’s testimony is barred under the Dead-Man’s Act.

The only event that occurred in the presence of Phillips for which the estate offered evidence was the actual execution of the 1987 Will and Phillips’ retention of the will immediately following its execution.  Ruley’s meeting and conversation with Phillips and Klebba’s conversation with Phillips, which occurred after the two men left the office, constitute different events.

Klebba’s only argument for these two conversations being the same event is that they supposedly occurred close in time.  However, it is only Klebba’s own uncorroborated testimony that establishes this.  If Klebba had attempted to offer testimony as to the same events and claimed that they instead occurred a week or month after the execution, that testimony would unquestionably be barred.

The alleged communication that occurred between Phillips and Klebba is precisely the type of communication the Dead-Man’s Act is intended to bar.  If Klebba’s testimony were allowed, the estate would have no way of offering any contradictory evidence with which to dispute it.  The only living witness to any of these events and communications is Klebba.  In the end, the jury would be left with only Klebba’s testimony concerning the event.  This situation puts O’Connor in exactly the type of position that the Dead-Man’s Act was designed to prevent, 
i.e.
, an unfair disadvantage relative to the surviving interested person.

Klebba also maintains that the settlement which the estate reached with Wiegel raises a material question of fact as to whether O’Connor impliedly conceded the validity of the 1987 Will.  Klebba contends that Wiegel’s claim for $100,000 was based on the 1987 Will.  Klebba maintains that Wiegel’s claim was invalid on its face and that she could never have proven the existence of a valid oral contract between herself and Phillips.

Nevertheless, Klebba points out that O’Connor paid her claim for an undisclosed amount and refused his request to conduct limited discovery as to what Wiegel knew about the will and how much she was paid.  Klebba asserts that absent a belief about the validity of the 1987 Will, there was no legitimate basis for O’Connor to pay the claim.

The trial court properly disregarded the settlement the estate reached with Wiegel because it was not an admission and because it was not relevant to Klebba’s petition to admit the 1987 Will copy to probate. 

Having determined that Klebba’s testimony was properly excluded and that the settlement with Wiegel is irrelevant and inadmissible, we now turn our attention to whether there was any competent admissible evidence which could have established a material issue of fact which could have overcome the presumption that Phillips revoked the 1987 Will. 

There was no dispute about the 
execution
 of the 1987 Will.  The only dispute was over the use of a presumption to establish that the will was 
later
 
revoked
 by the testator.

Wiegel filed her claim, in the amount of $110,000, against Phillips’ estate on April 25, 2002.  on September 29, 2003, the trial court granted O’Connor’s motion for summary judgment with regard to Klebba’s petition.  Thereafter, on October 24, 2003, O’Connor served Klebba with notice of a motion to dismiss the supplemental proceedings brought by Wiegel.  In the motion, O’Connor stated that he had settled Wiegel’s claim with her.  

Wiegel has refused to disclose the amount of the settlement that she reached with the estate.  In his combined motion to reconsider and deny O’Connor’s motion to dismiss the supplemental proceedings, Klebba maintained that by settling the Wiegel claim, O’Connor’ was implicitly admitting the validity of the 1987 Will.  Klebba requested that the court allow him to conduct discovery so as to determine the terms of the settlement and whether Wiegel had any information that could be directly relevant to the issues involved in his petition.  Alternatively, Klebba asked for leave to present his disclaimer so that he could competently testify that Phillips had not revoked the 1987 Will. 

On November 13, 2003, O’Connor responded, denying that the settlement of Wiegel’s claims “either implicitly or logically, suggest that the Administrator believed that the 1987 Will was valid.”  Furthermore, O’Connor explained:

“What the Administrator determined was that Wiegel had a colorable claim that an oral agreement may have been entered into with Mr. Phillips, that Wiegel had provided substantial services for Mr. Phillips’ benefit during his lifetime, that the costs of defending her claim would be substantial, and that a settlement would be in the best interests of the Estate.  Nothing in the Administrator’s analysis regarding the Wiegel claim was inconsistent with the Administrator’s consistent position that the 1987 Will had been revoked and was invalid.”

O’Connor also argued that even if Klebba released his interest in the estate, he still could not testify by reason of the Dead-Man’s Act.

Thereafter, Klebba replied.  On December 4, 2003, the trial court denied Klebba’s motion.  In a separate order, the trial court dismissed the supplemental proceedings regarding the Wiegel claim.

Despite the trial court’s denial of the limited discovery of Wiegel, Klebba admits that she too would be barred from testifying as to what Phillips told her about his intentions under the Dead-Man’s Act.  

As such, we find that there is no competent admissible evidence which can establish a material issue of fact which could have overcome the presumption that Phillips revoked the 1987 Will.  Consequently, the trial court’s decision to grant summary judgment was proper.

II

Klebba contends that he should have been allowed to release his interest and then testify as to the events that occurred between him and Phillips in the photocopier room.

Klebba recognizes that this is not allowed under 
Snyder v. Steele
, 304 Ill. 387 (1922), and section 8-501 of the Illinois Code of Civil Procedure, which states: 

“In any action or proceeding, any person who would, if a party thereto, be incompetent to testify therein under the provisions of Section 8-201 or Section 8-401 of this Act, shall not become competent by reason of any assignment or release of his or her claim, made for the purpose of allowing such person to testify.”  735 ILCS 5/8-501 (West 2002).

Klebba contends that 
Snyder
 should be deemed irrelevant by this court because it was written before the Illinois legislature enacted the Code of Civil Procedure and because this court never cites the case.  

As to section 8-501, Klebba contends that it is unconstitutional.  Klebba argues that the statute is unconstitutional because it is the court and not the legislature that has the constitutional power and authority to regulate and manage the courts.  As such, Klebba claims that the legislature through the enactment of section 8-501 has impermissibly acted to interfere with the court’s power to run its courtroom.

Klebba has failed to cite authority which would support his argument and has failed to provide any meaningful analysis with respect to this argument.  Therefore, we find that it is without merit.  Furthermore, we point out that recognized precedent establishes that the legislature may address matters concerning evidence and the competence of witnesses. 

Section 8-501 prohibits an individual who is an interested person in an estate from attempting to disclaim the interest in that estate in order to thereafter offer testimony adverse to the interests of the estate.  As such, the trial court correctly disregarded Klebba’s testimony, although he offered to disclaim his interest in the estate. 

CONCLUSION

For the foregoing reasons, we find that the trial court properly determined that Klebba’s testimony was barred by the Dead-Man’s Act and that summary judgment was proper.  The decision of the trial court is affirmed. 

Affirmed.

Theis, J. and Quinn, J., concur.

FOOTNOTES
1:
Theresa Proietto also appears on the notice of appeal as an appellant, but she did not file a brief or participate in this appeal.

2:
In the deposition, the 1987 Will is referred to as Exhibit 3.