WESLEY CRAIG, Appellee, *vs.* OTIS A. TROTTER *et al.* Appellants.

*Opinion filed December 21, 1911.*

1. APPEALS AND ERRORS—*when freehold is involved though the will does not expressly devise real estate.* A freehold is involved on appeal from an order of the circuit court admitting to probate a will rejected by the probate court but making no order as to the will admitted to probate by the probate court, even though the will admitted to probate by the circuit court merely devises the property of the testator without mentioning real estate, where real estate is devised by the other will and it may be fairly inferred from the record that the testator owned real estate at his death.

2. WILLS—*what is sufficient request by testator to attest will.* It is not necessary that the testator shall by his own words either acknowledge his signature or request the attestation of the witnesses, and if persons are brought to him by a third party with the statement, in his presence, that they have been brought for the purpose of witnessing his will, and he then executes the will, which is signed by them as witnesses in his presence, his assent may be inferred unless there is other evidence leading to a different conclusion.

3. SAME—*testimony showing that testator was physically unable to sign will is competent on probate.* On application for probate, testimony describing the condition of the testator's hands, the extent to which they were swollen and the position and flexibility or stiffness of his fingers is competent to contradict the testimony of the subscribing witnesses that the testator signed the will in their presence; but testimony of nurses and others that in their judgment he could not hold a pen and pencil, though they had not seen him try, is properly rejected. (*Stuke* v. *Glaser,* 223 Ill. 316, distinguished.)

4. EVIDENCE—*when examination tending to show that witness has made contradictory statements should be allowed.* Where a witness who has testified that the testator assented, by spoken words, to the witnessing of the will, is asked, on cross-examination, if he did not, in a conversation with a named person at a specified time and place, state that the testator never said or did anything to indicate his assent, it is error for the court to refuse to allow the witness to answer and to refuse to allow the person with whom the alleged conversation was had to be interrogated with reference thereto.

5. SAME—*rule as to proving signature by comparison with signature admitted to be genuine.* The genuineness of a signature cannot be proved by comparison with a signature or other writings admitted to be genuine where such signature or other writings are not a part of the record and are not in evidence in the case; but where such signature or other writings are already in evidence in the case, comparison may be made by the jury and by experts testifying to the jury.

APPEAL from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

WILSON & WALL, CHARLES J. SCOFIELD, WALTER H. BENNETT, and GOVERT & LANCASTER, for appellants.

W. H. COON, WILLIAM SCHLAGENHAUF, HUBBARD, SCHMIEDESKAMP & GROVES, and O'HARA, O'HARA, WOOD & WALKER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court admitting a will to probate. John W. Craig executed a will on March 5, 1910, whereby he devised to his brother Wesley certain real estate which he valued at $6000, and gave to another brother and his two sisters legacies of $6000 each. He gave twenty legacies of various amounts from $500 to $2000, and directed that all the residue of his property should be equally divided among his said brothers and sisters. On March 30, 1910, he executed a codicil to this will, whereby he reduced the amount of one of the legacies and gave legacies to three other legatees. On April 21, 1910, the will in controversy here purports to have been executed by him, whereby all his property is given in equal parts to his said four brothers and sisters. He died on April 28, 1910. Both wills were deposited in the county court, and after a hearing the first will and codicil were admitted to probate and the later will rejected. Wesley Craig appealed to the circuit court from both or-

ders. A hearing was had in the circuit court, the will of April 21 was admitted to probate, and it was ordered that no order be entered as to the appeal from the order admitting the prior will and codicil to probate until the further order of the court. Four of the legatees under the first will have appealed to this court.

The appellee insists that this court has no jurisdiction of the appeal because no freehold is involved, there being no other basis for the jurisdiction. The legacies to the appellants are pecuniary, the will in controversy describes no specific real estate, and it is said that there is no evidence that John W. Craig died seized of any real estate. The will does purport to dispose of all the testator's real estate. The prior will, which was introduced in evidence, describes a certain tract of land which was devised to Wesley Craig, and it may be fairly inferred from the record that the testator owned real estate at his death. The effect of the order admitting the will to probate is to vest the freehold in the devisees.

The only evidence introduced by the proponent of the will was the testimony of the subscribing witnesses, and the appellants insist that it does not sufficiently appear from their testimony that they attested the will at the request of the testator. The witnesses went, at the invitation of Wesley, to the place where the will was executed, the testator's room in Blessing Hospital, in Quincy, where he was confined, as he had been for some weeks, critically ill with a disease of the valves of the heart, which soon after terminated fatally. They testified that when they came into the room Wesley told the testator that he had brought them to witness his will. One of them said that the testator said "all right," and the other that he assented with a slight motion of the head. The will was then read over to him. He said it was all right,—it was his will,—and signed it, and the witnesses then signed in his presence. It is not necessary that the testator shall in words of his own either

acknowledge his signature or request the attestation of the witnesses. It is a sufficient request if he makes known his desire that the witnesses shall sign as witnesses of his will. An invitation given or expression of a desire made in his presence by another on his behalf assented to by him is equivalent to his own invitation or expression. If persons are brought to him with the statement, made in his presence, that they have been brought for the special purpose of witnessing his will, and he then executes his will and it is signed by them as witnesses in his presence, it may fairly be inferred that everything done was at his request, unless the other evidence leads to a different conclusion. (*Allison* v. *Allison,* 46 Ill. 60; *Harp* v. *Parr,* 168 id. 459; *Masonic Orphans' Home* v. *Gracy,* 190 id. 95; *Gilbert* v. *Knox,* 52 N. Y. 129; *Inglesant* v. *Inglesant,* L. R. 3 P. & D. 172.) The question in the first three cases cited was in regard to the acknowledgment and not the request of the witnesses, but the principle is the same.

The appellants introduced testimony tending to show that the attesting witnesses were not in the testator's room at the hospital at the time they claim the will was executed, and that the testator's physical condition was such that he could not have signed his name to the paper as the witnesses testified he did, because his hands were so much swollen that he could not hold a pen or pencil. It is insisted by the appellee that this evidence of physical inability was not competent, and he cites in support of his position *Stuke* v. *Glaser,* 223 Ill. 316. That case, however, is not in point. The comatose condition of the testatrix in that case, if shown, would have affected her testamentary capacity, and it is held that testamentary capacity was not open to general inquiry in a proceeding for the probate of the will, but that those opposing the probate were limited, so far as that question was concerned, to the testimony of the subscribing witnesses. In this case, however, the claim was made that the testator had never executed the will, and testimony that

he was physically unable to make his signature was competent to contradict the testimony of the subscribing witnesses that he had personally signed his name. Evidence of nurses and others that in their judgment the testator could not hold a pen or pencil, though they had not seen him try, was properly rejected. They were permitted to describe the condition of his hands, the extent to which they were swollen and the position and flexibility or stiffness of the fingers; and from their testimony the court could draw a conclusion as to his ability to write, as accurately as the witnesses.

L. H. Menne, one of the subscribing witnesses to the will, testified that after the witnesses got into the testator's room, the appellee said to his brother, "I brought Mr. Menne and Bobbie here to witness your will," and that then John Craig said, "All right." On cross-examination he was asked if he had not said to W. H. Govert, in a conversation at a certain time and place, that John Craig at no time said anything with reference to Menne's witnessing the will to indicate that he consented or wanted him to do so, either by word, motion or gesture. The court refused to require the witness to answer the question, and, when W. H. Govert was called by the appellants, refused to permit him to answer the same question or to be interrogated about the conversation. Such a conversation would have tended to impeach Menne by showing that he had made a statement about a material question differing from his testimony in court, and the examination in regard to it should have been allowed.

The first will and the codicil, which were admitted to bear the genuine signatures of John W. Craig, were introduced in evidence by agreement, for the purpose of showing the appellants' interest. The appellants produced as witnesses certain experts in handwriting, and sought to show by them that they had made examinations of the respective signatures and that the signatures to the wills of

March 5 and of April 21 were not made by the same person, and to show also the reasons for coming to that conclusion.  The court sustained the appellee's objection to this evidence, and his counsel now seek to sustain the ruling on the ground that the genuineness of a signature can not be proved or disproved by a comparison of handwritings.  It is well settled that this is the rule where the genuine signatures are no part of the record and are not in evidence in the case.  It is equally well settled that when other writings or signatures admitted to be genuine are already in the case, comparison may be made by the jury and by experts testifying to the jury.  (*Stitzel* v. *Miller,* 250 Ill. 72; *Himrod* v. *Gilman,* 147 id. 293; *Rogers* v. *Tylcy,* 144 id. 652; *Brobston* v. *Cahill,* 64 id. 356.)  It was error to sustain the objection to this testimony.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*