### In the Matter of the Estate of Charles H. Limbach, Deceased.

### Elsa Limbach, Appellant, v. Russell Warder Limbach, Appellee.

### Gen. No. 24,284.

1. WILLS, § 89*—*when evidence insufficient to show publication of nuncupative will.* Upon appeal by one of the proponents of a nuncupative will from an order admitting to probate a written will, evidence reviewed and *held* to be insufficient to establish a publication of the alleged nuncupative will.

2. WILLS, § 94*—*what evidence admissible to show fraud in execution.* The rule limiting the contestants of a will to the testimony of subscribing witnesses, when the testimony of such witnesses is exclusively relied upon by the proponents, applies only to testimony as to testamentary capacity, and fraud going to the execution of the instrument offered for probate may be shown on behalf of contestants by any competent evidence.

3. WILLS, § 94*—*when fraud as to making of nuncupative will shown.* Evidence, offered by the contestants of an alleged nuncupative will, establishing the fact that the words of the supposed will were never in fact spoken, showed such fraud as is contemplated by section 15 of the Statute of Wills (J. & A. ¶ 11556).

4. WILLS, § 118*—*effect of nuncupative will as revocation of written will.* A revocation of a written will by a later nuncupative will is forbidden by section 17 of the Statute of Wills (J. & A. ¶ 11558).

5. WILLS, § 118*—*application of statute to partial revocation.* Section 17 of the Statute of Wills (J. & A. ¶ 11558) applies to an attempt by a testator to revoke a part, as well as the whole, of his previous testament.

Appeal from the Circuit Court of Cook county; the Hon. GEORGE

---

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

F. BARRETT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed April 11, 1919.

PATRICK H. O'DONNELL, ARTHUR B. SCHAFFNER and JULIUS LIMBACH, for appellant.

JOHN S. HUEY and BUSBY, WEBER & MILLER, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by one of the proponents of a nuncupative will from an order of the Circuit Court of Cook county entered upon an appeal from the Probate Court of Cook county denying probate thereof, and admitting to probate a written will executed by deceased on the 30th day of April, 1912. Said deceased, Charles H. Limbach, died a resident of the county of Cook and State of Illinois, on January 16, 1917. He left surviving him his wife, Russell Warder Limbach, and brothers and sisters but no children. The written will devised and bequeathed all the testator's estate, both real and personal, "to my dearly beloved wife, Russell Warder Limbach," and appointed her executrix without bond.

It is claimed the nuncupative will was spoken on the 24th day of December, 1916, at the residence of a brother of the deceased in the City of Chicago, and that it was reduced to writing on January 1, 1917. The writing is witnessed by Herbert W. Limbach and Anna M. Breining. Emma Breining Limbach and Pearl M. Limbach certify thereon that it was reduced to writing in their presence by Herbert W. Limbach at his residence. The witnesses for the proponents are in greater or less degree related to the beneficiaries of it. They testify that on the evening of December 24, 1916, Charles H. Limbach, at a Christmas party, said to his brother Julius, "Julius, I am seri-

ously sick and I will not live long, and I want you to listen to me and make a note of what I want done with some of my property—my stock in the Chicago Mill & Lumber Company.'' Said Julius said, ''Oh, forget it. You will get well and then you can attend to these matters yourself.'' He thereupon walked a few paces away. Then said Charles turned to and said to the undersigned, ''Do you see, he won't listen to me. I will tell you what I want and you can get him to fix it up for you. I want to provide for Hattie in Europe (meaning his sister) and my nieces and nephews. To Hattie I want to give $10,000 of preferred stock in the Chicago Mill & Lumber Company and $20,000 common stock, and to Russell A. of Aurora I want to give $5,000 preferred and $15,000 common, and to Elsa and your boy, Junior, and Mildred Harriet, I want them to have the same as Russell A. I want them to have this. It is my will they should get what I say and I want you to promise me that each gets what I say. I can feel that I cannot live long, although I would like to do so much, and I make this my last will and I want Julius to be my administrator to carry out this my last wishes.''

The testator was at this time ill with hardening of the arteries. He was being cared for by a nurse. Appellee urges that the will was not executed while the testator was *in extremis,* and that it is, therefore, invalid as a nuncupative will. We think, however, the case of *Harrington v. Stees,* 82 Ill. 50, against this contention. The witnesses for the proponents testify that the deceased came to the home of his brother, Julius, on Winthrop avenue, Chicago, on the evening in question, accompanied by his wife and the nurse, about 6 o'clock in the evening and left for his home between 9 and 10; that he was weak and exhausted and his brother helped to bring him into the house; that without any suggestion from any one he, prior to the distribution of the presents which were on a Christ-

mas tree, and while his wife was absent in the kitchen and the nurse out of his hearing, called these witnesses to him; that they came and arranged themselves in seats in a semicircle about him; that he then made this nuncupative will giving his personal estate to his sister, nieces and nephews; that it was not again mentioned or discussed by him or any one of those who heard him speak the words upon the evening in question.

The contestant over objection introduced the testimony of the nurse who said that she had had charge of the deceased after the 9th of November, 1916, until his death; that the testator with the witness and his wife arrived at the home of his brother, Julius, on the 24th not earlier than 7 in the evening; that Julius came out and helped the testator in and that the testator sat down in a big arm chair between the sitting room and the front parlor; that the witness sat opposite him to his right; that his wife was in the room; that about fifteen minutes after they came the gifts were distributed by Mrs. Julius Limbach and then about three-quarters of an hour was spent talking about the gifts; that there was a general conversation in which the presents were discussed and shown and that during all this time testator was sitting right beside the witness; that their chairs were right together; that there was only about an inch between them; that she was facing the same direction he was; that the wife of testator was in the room during this time and that she left it only once to get a drink of water for her husband and was then gone only a few minutes; that she, the witness, sat beside him there until he left to go to the dining room, which was about a half an hour thereafter, and then accompanied him to the dining room where he sat right at the head of the table; that she, the witness, sat alongside of him with his wife three seats away from them; that the conversation was general, of a social nature; that they sat at the table

about a half hour; that she and testator and his wife left the table before the others; that Herbert Limbach, Mrs. Breining and Mrs. Herbert Limbach were not seated in chairs at his right together and that there was no semicircle around his chair there at any time as the witnesses for proponents say; that no such words as those stated in the supposed will were spoken by the testator at that time or place, or during that evening, and that she heard nothing of any such matter until 2 or 3 days after deceased was buried.

The contestants also introduced the testimony of three experts who testified to an examination of the writing purporting to be said nuncupative will on January 24, 1917, and who stated that it was their opinion that the writing was then only 3 or 4 days old. If this were true the will could not have been reduced to writing at the time. testified to by witnesses for the proponents.

The statute of this State as to nuncupative wills is set forth in sections 15 and 16 of chapter 148, Hurd's Rev. St. page 2969 (J. & A. ¶¶ 11556, 11557). Section 15 provides:

"A nuncupative will shall be good and available in law for the conveyance of personal property thereby bequeathed, if committed to writing within twenty days after the making thereof, and proven before the county court by two or more credible, disinterested witnesses, who were present at the speaking and publishing thereof, who shall declare, on oath or affirmation, that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory; and that he or she did at the same time, desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect; and that such will was made in the time of the last sickness of the testator or testatrix; and it being also proven by two disinterested witnesses, other than those hereinbefore mentioned, that the said will was committed to writing within ten

days after the death of the testator or testatrix; and no proof of fraud, compulsion or other improper conduct be exhibited, which, in the opinion of said court, shall be sufficient to invalidate or destroy the same; and all such wills, when proven and authenticated as aforesaid, shall be recorded in like manner as other wills are directed to be recorded by this act: *Provided* that no letters testamentary shall be granted on such will, until the expiration of sixty days after the death of the testator or testatrix.''

It is first claimed by appellant that the court erred in admitting evidence other than that of the subscribing witnesses because the proponents relied exclusively upon their testimony. In support of this contention appellant cites *Speer v. Josenhans,* 274 Ill. 237. Appellee claims the evidence was admissible under the provision of the statute, which makes the admission of the will to probate conditional upon the fact that ''no proof of fraud, compulsion or other improper conduct be exhibited which in the opinion of said court shall be sufficient to invalidate or destroy the same.'' This language of section 15 (J. & A. ¶ 11556) is practically identical with the language of section 2 (J. & A. ¶ 11543) which relates to the probating of written wills. Section 2 has been construed by the highest court in numerous cases.

The rule contended for by appellants is without doubt the law as to all evidence tending to show a lack of testamentary capacity in the testator. Indeed a more rigid rule in that respect than appellant contends for is announced in the recent case of *Mayer v. Schrenkler,* 286 Ill. 324, where it is held that even where the proponents offer the testimony of witnesses other than the subscribing ones, the contestants nevertheless may not introduce general evidence on that subject. A contrary expression in *Speer v. Josenhans, supra,* is expressly overruled. We are not aware of any case in which it has been held that this rule is to

be applied to evidence tending to show fraud, compulsion or other improper conduct. The case of *Stuke v. Glaser,* 223 Ill. 316, holds, we think, directly to the contrary. There the court pointed out the distinction between evidence tending to show testamentary incapacity and that tending to show fraud within the meaning of the statute. Testimony by witnesses other than the subscribing ones was there offered tending to show that the testator at the time of the execution of the will was in a comatose condition and unable to transact business. It was excluded by the trial court. The Supreme Court held this was not error for the reason that the evidence tended only to show testamentary incapacity. It said: ''It is not claimed the unconscious condition of Mrs. Link was produced by any one for the purpose of procuring the will, but her condition appears to have resulted from her disease. The 'fraud' permitted to be proven to invalidate the will in a proceeding to admit it to probate was not intended to embrace the testamentary capacity of the testator. It relates to such conduct as a trick or device by which a person may be induced to sign the paper under the impression it is something else * * * or the substitution of another paper for part of the will after it has been signed, and matters of like character.''

In *Craig v. Trotter,* 252 Ill. 228, *Stuke v. Glaser,* was distinguished, and it was there held that evidence other than that of the subscribing witnesses ought to have been received to show that the attesting witnesses were not in the room at the time the supposed will was executed and that testator's hands were swollen and in such a physical condition that it was impossible that he could have signed the will as claimed. Discussing *Stuke v. Glaser, supra,* the court said: ''That case, however, is not in point. The comatose condition of the testatrix in that case, if shown, would have affected her testamentary capacity, and it is held that

testamentary capacity was not open to general inquiry in a proceeding for the probate of the will, but that those opposing the probate were limited, so far as that question was concerned, to the testimony of the subscribing witnesses. In this case, however, the claim was made that the testator had never executed the will, and testimony that he was physically unable to make his signature was competent to contradict the testimony of the subscribing witnesses that he had personally signed his name.''

Appellant says that *Craig v. Trotter, supra,* is inconsistent with the rule announced in the later case of *Speer v. Josenhans, supra,* and asks us to hold that in effect it is overruled by the later decision. *Craig v. Trotter, supra,* is cited on another point in the opinion in *Speer v. Josenhans.* If it was intended to overrule it, presumably the court would have said so. The opinion states: ''The Circuit Court sustained objections to testimony offered by the appellants that the signatures to the will and codicil were not the genuine signatures of Barbara Gerber.    *    *    *'' This was held to be properly excluded. Just what the evidence was is not stated, but that in the opinion of the court it did not tend to show fraud within the meaning of the statute is clear from the fact that elsewhere in the opinion it is stated that it has been uniformly held that on appeal from the County Court both parties ''were limited,    *    *    * so far as the execution of the will and testamentary capacity were concerned, to testimony of the subscribing witnesses, with the privilege to contestants to offer proof of fraud, compulsion or other improper conduct sufficient to invalidate the instrument as a will.'' And again: ''There was no evidence of fraud, compulsion or other improper conduct relating to the execution of the will or codicil, and the court did not err in admitting the instruments to probate.''

We think it is apparent from these decisions that

fraud, going to the execution of the instrument offered for probate, may be shown in behalf of the contestants by any competent evidence. The evidence here offered by the contestants tended to show that the words of the supposed nuncupative will were never in fact spoken. If they were not, then we think there was fraud as contemplated by the statute.

We also think we cannot say that the judgment of the trial court is against the weight of all the evidence. It may be that if appellant had tried her case upon the theory that general evidence was admissible, she would have made a much stronger case upon the facts. But this court must decide the case upon the record before it. Tried by the record, the testimony for the proponents tending to show the publication of this alleged nuncupative will seems most improbable. It would have been a most unusual thing for the testator to do under the circumstances which appear in the evidence. He had made a prior will in writing, simple and direct in its provisions, which disposed of his entire estate. He was a business man, evidently of considerable experience and ability. One brother was a lawyer, another brother was a student of the law. While the testator was in his last illness, there was no apparent immediate peril and there is little to indicate that he believed his decease immediately imminent. He was preparing for a trip to Florida within the next few days. He had on the morning of the day in question, in company with his wife and nurse, made a trip to the factory where the business in which he was interested was conducted. He had plenty of time to make another written will if he wished to revoke or change the first one. Why should he choose this unusual way to make disposal of his estate?

Again, the contents of the will are extraordinary and improbable. By the written will he gave all his estate to his wife, expressly stated that he loved and cared for her and showed his confidence in her by mak-

ing her his executrix without bond. There is nothing in this record to indicate that his feeling and sentiments towards her had changed in any way. On the contrary, everything indicates they had not. Why should he choose the few minutes in which she was absent from the room to take away from her the estate which by the written will was given to her? No adequate motive appears.

Again, the conduct of the witnesses as related by them tends to disprove their testimony as to the making of this will. Is it possible that an estate of this amount was bequeathed in this extraordinary way and yet not a word of comment thereafter on this evening by the witnesses, the testator, or parties present with reference to it?

We think the evidence tending to disprove the prima facie case made by the proponents was admissible, and that we cannot say the judgment of the trial court is clearly against the weight of all the evidence.

We will add, however, that in our opinion the nuncupative will should not have been admitted to probate, even if its publication and execution had been established. It is inconsistent with and would, if admitted, in part revoke the prior written will. It is, therefore, invalid under section 17 of the Statute on Wills, Hurd's Rev. St., page 2969 (J. & A. ¶ 11558). In Schouler on Wills (5th Ed.), vol. 1, page 469, the author says: "As to the repeal or alteration of a written will by a nuncupative one. This, we have seen, is expressly forbidden by the Statute of Frauds. And under American codes, the revocation, total or partial, of a duly executed written will by an oral or nuncupative one is likewise prohibited." As authorities the author cites, *McCune's Devisees v. House,* 8 Ohio 144, and *Brook v. Chappell,* 34 Wis. 405. These cases are cited for a substantially similar statement of the law in 30 Amer. & Eng. Encyc. of Law (2nd Ed.), page 603 and 40 Cyc. 1171. Appellant contends these authorities are not applicable because the Ohio and Wiscon-

sin statutes differ materially from the 17th section of the Illinois Statute of Wills. The language of the opinions does not indicate, however, that the differences were controlling.

Appellant urges that section 17 of the Illinois Statute of Wills is limited in its application to cases in which the testator attempts to revoke the whole, as distinguished from a part of his previous testament, and cannot, therefore, be applied here. This construction we cannot adopt. It would practically have the effect (except in a very limited number of cases) of leaving the law in Illinois on this subject substantially as it existed in England prior to the enactment of the Statute of Frauds, 29 Charles II, ch. 3. We do not think this construction would express the intention of the legislature. On the contrary, we think said section 17 is applicable to all revocations by the testator's direct act. Schouler on Wills (5th Ed.), vol. 1, page 471. We do not think the nuncupative will can on any theory of the case be admitted to probate.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*