## Southwestern Milling Company, Appellee, v. Charles J. Fernstrom, Appellant.

## Gen. No. 27,677.

1. EVIDENCE—*admissibility of standards of handwriting first offered after jury sworn.* In an action for breach of contract of sale by the purchaser where the principal issue is as to the genuineness of the purchaser's signature, it is not error for the court to admit in evidence certain exhibits bearing admittedly genuine signatures, as the standards of writing, under the provisions of Cahill's Ill. St. 1921, ch. 51, ¶¶ 50-52, prescribing the conditions under which standards of handwriting are admissible, where, although the jury had been impaneled, no evidence had been taken and the exhibits in question were, after due notice to defendant, submitted to defendant and his attorney for their examination and the defendant's witnesses were first examined as to such exhibits before any of the plaintiff's evidence was introduced and where the signatures thereon were admitted at the trial to be genuine.

2. EVIDENCE—*admissibility of bank's signature card to prove handwriting.* In an action for damages for breach of contract where the principal issue is the genuineness of defendant's signature to the contract, it is not error for the court to admit in evidence a bank's signature card bearing the defendant's signature, as a standard of comparison, where such card, though first excluded on defendant's objection, was admitted after defendant's handwriting expert had used it as the basis for his opinion that the signature on the contract was not genuine, and where the signature thereon was admitted by defendant to be genuine and he, his attorney and his handwriting expert all had opportunity to examine the card and compare the signature with that on the contract before it was admitted in evidence and where the card had not been in plaintiff's possession but was brought into court by a bank cashier on subpœna.

3. APPEAL AND ERROR—*presumption as to regularity of proceedings not shown in bill of exceptions.* The action of the trial court in overruling defendant's motion for the production of certain original exhibits introduced in evidence on the trial in order that they may be incorporated in the bill of exceptions will not be held to be error where it appears from the clerk's transcript that the motion was made after the judgment appealed from had been entered, the appeal bond filed and approved and on the day for the approval of the bill of exceptions, where such bill of exceptions

makes no reference to such proceedings, does not contain the petition or motion or any of court relative thereto or show what proceedings were had on the hearing or set out the exhibits or copies of them.

Appeal from the County Court of Cook county; the Hon. S. N. HOOVER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed November 8, 1922.

OTTO CHRISTENSEN and SAMUEL A. STRAUSS, for appellant.

ALLEN, WARD, MYERS & SCHWARTZ, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On December 23, 1920, plaintiff commenced an action of assumpsit in the county court of Cook county to recover damages for defendant's breach of a written contract alleged to have been executed by the parties on September 8, 1920, whereby defendant agreed to buy and plaintiff agreed to sell 100 barrels of flour at $11.70 per barrel, to be delivered within ninety days at defendant's place of business in Chicago. In its declaration plaintiff averred, in substance, that after the execution of the contract it frequently requested defendant to order the flour and accept delivery thereof within the ninety days; that finally defendant on December 3, 1920, requested plaintiff to make delivery of part of the flour, viz., 50 barrels, on December 13, on which day plaintiff tendered to defendant at his said place of business 50 barrels of the flour and offered to deliver the remaining 50 barrels, but defendant refused to accept the 50 barrels, or any of the 100 barrels; that the market price of the flour in Chicago on December 13 was $3.90 per barrel less than the contract price, and that plaintiff was thereby damaged on account of defendant's failure to accept and pay for the 100 barrels at the contract price in the sum of

$390, and also damaged in the additional sum of $21.50 for cartage on the 50 barrels, and also in the sum of $15 for storage.

Defendant filed a plea of the general issue, and also a verified special plea to the effect that the purported signature on the contract was not his signature. The cause was tried before a jury resulting in a verdict in favor of plaintiff for $411.50—being the amount of plaintiff's claim of $390 for the difference between the contract price and said market price, and its claim for cartage $21.50. On December 3, 1921, judgment was entered against defendant on the verdict and this appeal followed.

The main issue on the trial was whether or not the instrument sued upon bore the genuine signature of the defendant.

It appears from the bill of exceptions that the case was called for trial and a jury sworn November 2, 1921, but that no evidence was heard until November 7. It appears from the clerk's transcript that on November 4, after due notice to defendant, upon the application of plaintiff "to fix a time for the examination of certain standards of writing to be introduced on the trial," the court ordered that said standards of writing be impounded with the clerk and that defendant or his attorney be given an opportunity to examine the same. The bill of exceptions does not disclose what standards of writing, if any, were impounded. Plaintiff introduced in evidence, as exhibit A, the contract sued upon, and also, over defendant's objections, four other instruments, marked respectively exhibits B, C, D and E, each signed by defendant. During the interim between November 4 and the day of the trial, defendant's attorney had possession for a time of all five exhibits and the same were examined by defendant. Plaintiff's witness, Franz W. Schmidt, its salesman, testified in substance that defendant's signature on the contract was genuine, that he saw defendant at-

tach his signature thereto September 8, 1920, at defendant's place of business, and that the instruments, exhibits B and C, were also signed by defendant in his presence. Defendant, called as a witness for plaintiff, admitted that exhibits D and E bore his genuine signature. James I. Ennis, a handwriting expert and called as plaintiff's witness, testified that in his opinion the same person who wrote the defendant's signature on exhibits B, C, D and E, also signed the contract, and gave reasons for his opinion. Plaintiff offered in evidence, as exhibit G, a bank signature card, identified by a cashier of the bank where defendant did his banking business and admitted by defendant to have his genuine signature thereon, but, on defendant's objection, the court refused to admit the same. Defendant testified in his own behalf that he did not sign the contract and that, because of an accident which happened to him early on the morning of September 8, 1920, he was not at his place of business on that day after 7:30 o'clock in the morning, as to which circumstance he was corroborated by the testimony of an employee. Howard A. Rounds, defendant's witness and a handwriting expert, testified that in his opinion the contract did not bear the genuine signature of defendant. It appeared that he reached this opinion after comparing said signature, not only with defendant's signature on exhibits B, C, D and E, but also his signature on exhibit G, whereupon the court over defendant's objection admitted exhibit G in evidence. Oscar D. Granstand, cashier of said bank, testifying for defendant, gave it as his opinion that the signature on the contract was not defendant's.

Counsel for defendant first contend that the trial court erred in admitting in evidence exhibits B, C, D and E, and for the reasons that (a) they were offered after the case had been called for trial and the jury sworn, and (b) the provisions of the statute relative to standards of handwriting were not sufficiently com-

plied with. In 1915, the legislature of this State passed "An Act concerning proof of handwriting and to permit proof of handwriting to be made by comparison" (Cahill's Ill. St. 1921, ch. 51, ¶¶ 50-52) as follows:

"Section 1. That in all courts of this State it shall be lawful to prove handwriting by comparison made by the witness or jury with writings properly in the files or records of the case, admitted in evidence or treated as genuine or admitted to be genuine, by the party against whom the evidence is offered, or proved to be genuine to the satisfaction of the court.

"Section 2. Before a standard of writing shall be admitted in evidence by the court for comparison such notice thereof as under all the circumstances of the case is reasonable shall first be given to the opposite party or his attorney.

"Section 3. A reasonable opportunity to examine such proposed standards shall on motion duly made be accorded the opposite party, his attorney and witnesses, prior to the introduction in evidence of such standards and the court may, in its discretion, impound the same with the clerk of the court for that purpose."

Prior to the passage of this act it was a rule of evidence in this State that "the genuineness of a signature cannot be proved by comparison with other admittedly genuine handwriting or signatures not admissible in evidence for other purposes or not already a part of the record," but that "when other writings or signatures admitted to be genuine are already in the case, comparison may be made by the jury, with or without experts." (*Stitzel v. Miller,* 250 Ill. 72, 77, and cases cited; *Craig v. Trotter,* 252 Ill. 228, 233; *People v. Clark,* 301 Ill. 428, 432.) In the present case, exhibits B, C, D and E, when admitted in evidence by the trial court, were not already a part of the record, and were only admissible because of the provisions of said statute. In the *Clark* case, *supra,* our Supreme

Court, referring to the statute, said that it, "with certain limitations" authorizes "proof of handwriting by comparison with writings properly in the files or records of the case, admitted in evidence, or treated as or admitted to be genuine, or proved to be so to the satisfaction of the court." What are these limitations? They are (1) that before a standard of writing shall be admitted in evidence for comparison "such notice thereof as under all the circumstances of the case is reasonable shall first be given to the opposite party or his attorney," and (2) "a reasonable opportunity to examine such proposed standards shall on motion duly made be accorded the opposite party, his attorney and witnesses," prior to the introduction in evidence of such standards, and "the court may, in its discretion, impound the same with the clerk" for that purpose. It is to be noticed that the impounding of the standards is discretionary with the court. Under all the facts and circumstances disclosed we do not think that the trial court erred in admitting the exhibits in evidence. It appears that the signature on each was admitted to be defendant's genuine signature. Defendant's attorney on the trial so treated them. It further appears that before the exhibits were admitted in evidence, the defendant and his attorney were given reasonable notice, and that defendant, his attorney, and his witnesses examined them before any of plaintiff's evidence was introduced. The fact that the jury had previously been impaneled would make no difference. Nor do we think that the trial court erred in finally admitting in evidence the bank signature card, exhibit G, for comparison of defendant's signature thereon with the signature on the contract. It was not in plaintiff's possession, but was brought into court during the trial by the cashier of the bank on subpœna, and defendant admitted that the signature thereon was his genuine signature, and he, his attorney, and his handwriting expert, all had ample opportunity to examine

the instrument, and compare the signature thereon with that on the contract, before it was admitted in evidence. Nor can we say, as urged by counsel, that the verdict of the jury, on the question whether the signature on the contract is the genuine signature of defendant, is manifestly against the weight of the evidence.

Counsel for defendant also contend that the court erred in overruling defendant's motion for the production of certain exhibits introduced in evidence on the trial. It appears from the clerk's transcript that after the judgment appealed from had been entered, and after the appeal bond had been filed and approved, and on the day the trial judge had before him the bill of exceptions for approval, defendant presented to the court a written petition and moved that an order be entered directing plaintiff's attorneys to forthwith produce in court certain original exhibits which had been introduced in evidence on the trial in order that they might be incorporated in said bill of exceptions, and that the court, on March 6, 1922, approved said bill of exceptions and ordered it filed, but overruled defendant's motion. The bill of exceptions makes no reference to the proceedings in court on March 6. It does not contain said petition or motion, or any order of court thereon, or what proceedings were had on the hearing, if any. It must be presumed that the action of the court was proper, nothing to the contrary appearing in the bill of exceptions. We fail to find said exhibits B, C, D, E and G, or copies thereof, in the bill of exceptions. If defendant wanted the originals thereof incorporated in the bill of exceptions it was for him to take the proper proceedings to that end, and, if such proceedings were taken and an adverse ruling had, to present the question for review in the proper manner.

Counsel for defendant further contend that, admitting that defendant signed the contract sued upon, the

verdict is manifestly against the weight of the evidence. We do not think so. · The case alleged in plaintiff's declaration was sufficiently established by the evidence to warrant the verdict. No point is made as to amount of the damages assessed. And we do not think that the remarks of plaintiff's attorney in his closing argument to the jury were such as require a reversal of the judgment.

Finding no reversible error in the record the judgment of the county court is affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.