TYNA JACKSON *et al.*, Plaintiffs-Appellants, *v.* GWENDOLYN V. JACKSON, as Exr., *et al.*, Defendants-Appellees.

(No. 70-85; ▮▮▮▮▮▮▮

Second District—March 22, 1971.

68

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellants.

George Adams, of Chicago, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an appeal from a will contest in which a jury found in favor of the Executor and proponent of the will. Factually, Emma J. Hurley, known as Aunt Emma, executed on the 11th of December, 1967, triplicate originals of her last will and testament which was prepared by Attorney Archie B. Weston Sr. Thereafter, one of the triplicates was returned to him and placed by him in Mrs. Hurley's file for safe keeping. Two of the executed triplicates were kept by Mrs. Hurley. By the terms of the will Gwendolyn Jackson was named sole beneficiary and Executor. Mrs. Hurley died on the 14th of October, 1968.

Gwendolyn V. Jackson, a niece of Mrs. Hurley, had resided with her for many years. Shortly before Mrs. Hurley's death Tyna Jackson, a half-sister, moved into the second floor of the premises.

Several hours after Mrs. Hurley's death at 7:30 A.M. a search was made by her relatives for papers indicating what to do and no will was found. There is some conflicting testimony as to the access to Mrs. Hurley's cabinet in her bedroom where a Mr. Bowles, her financial adviser, testified she kept the will and that he had observed it there a few

days before her death. There was no testimony that Mrs. Hurley had ever indicated an intent to revoke her will or had advised her attorney she was doing so, nor had she requested him to do so.

Gwendoyn V. Jackson not only was the niece of Mrs. Emma J. Hurley, but according to testimony she was a companion performing various services for her. Gwendolyn V. Jackson also bought some of the furniture in the house. According to all the testimony received there was a continuing good relationship between Aunt Emma and Gwendolyn V. Jackson, her niece, up to the date of her death. After Emma J. Hurley died, another half-sister of Mrs. Hurley, Edith Timmons, moved into the premises and shortly thereafter Gwendolyn V. Jackson moved out.

This action is brought by Tyna Jackson and Edith Timmons against Gwendolyn V. Jackson individually and as Executor, and against two other half-sisters, Welcom Jackson and Wilma Bey, who did not contest the admission of the will to probate.

The question before the Court and jury was whether or not Emma J. Hurley had destroyed and revoked her will.

The major contention of the Plaintiffs is that the Trial Court erred in failing to direct a verdict for the Plaintiff at the conclusion of the Defendant's case, and that the Court further erred in not entering a verdict *non obstante veredicto*. The basis for this contention is that the evidence adduced at the trial by the seven witnesses for the defendant, failed to overcome a presumption of revocation of the will by the testatrix, and Plaintiff has cited the following cases in support of this contention. (*Koester v. Jennings et al.* (1924), 334 Ill. 107, 165 N.E. 653; *In re: Moos' estate* (1953), 414 Ill. 54, 110 N.E.2d 194; *In re: Marsh's estate* (1961), 31 Ill.App.2d 101, 175, N.E.2d 633.) Examination of these three cases is in order.

In *Koester* we find a bizarre set of circumstances. In 1923 the Probate Court of Cook County issued letters of administration. In January, 1926, Koester, who was then incarcerated in the State Penitentiary at Marquette, Michigan, sent what purported to be a copy of a will of the decedent supposedly executed in 1918 to the attorneys in Chicago. Upon his release he appeared in Court in December of 1926 attempting to have the will admitted to probate. The will was signed by the decedent by "x's." At the hearing on the will, the expert witness for the opponents thereto, testified that the paper upon which the will was executed, had not been manufactured prior to the year 1920, and the Court thereupon denied probate of the will. In 1927 Koester appealed to the Circuit Court, the procedure in effect at that time. Later, Koester admitted that the purported will was a forgery and attempted to introduce what he claimed was an alleged copy signed by "x's." Quite properly the Probate Court of

Cook County denied admission of this will to probate. The *Koester* case clearly on the facts is not determinative in any way of the issues herein.

In the *Marsh* case, *supra,* Sadie Marsh executed a will and left it with her attorney. Later, she wrote her attorney requesting him to mail the will to her, stating "I'll tear that up." The attorney delivered the will to her personally at which time she said "I am not going to destroy it now, I'll probably do it later." Four days later she was found dead in her hotel room and the will was not found. The Probate Court of Cook County admitted an unexecuted copy of this will to probate. The Appellate Court stated that the testimony of the attorney and his secretary showed a specific intention of the decedent to revoke the will. To overcome the strong presumption of revocation indicated by the factual situation, evidence was introduced of kind treatment to the decedent. The Court stated that kindly treatment by a beneficiary was not enough in itself to overcome the presumption of revocation in this particular situation. It is thus seen that in *Marsh* there was a specific statement by the testatrix that she intended to destroy the will, and no will being found this was certainly a strong indication that she had done so.

In the *Moos'* case, *supra,* we find that Thomas P. Moos executed a will while in the hospital and while apparently apprehensive about a forthcoming operation. However, he recovered, and although admitted to the hospital two more times, he did not die until eleven months later. The proponents of the will sought to have a carbon copy admitted as a lost or destroyed will, which the Probate Court refused to do. Upon appeal to the Circuit Court, that Court made an express finding denying probate on the ground that the decedent had revoked the original will. The Appellate Court affirmed the findings of the trial courts holding that the evidence taken in its entirety was:

"not sufficient in quality or quantity to show that it is unlikely that the testator would revoke his will, or to create a moral conviction that he did not revoke it. The circumstances shown by the evidence was equally, if not more, consistent with the thought that the testator changed his intentions relative to the disposition of his property and destroyed the will himself."

It is to be noted expressly that in both the *Moos'* and the *Marsh* case, the proponents attempted to introduce an unexecuted copy of a will. In the instant case it is pointed out that the document submitted for probate was executed by the decedent, witnessed, and in the possession of her attorney, who had prepared triplicate originals and given instructions that all three be executed.

*In re: Morgan's estate* (1945), 389 Ill. 484, 59 N.E.2d 800 the administrator appealed from an order of the Circuit Court of Mercer County

admitting to probate a carbon copy of a will of Morgan. The Appellate Court affirmed the order. Morgan executed a will on June 29, 1936, left it with his attorney until 1938 when he had it mailed to Morgan at his request, and in July 12, 1943 when Morgan was found dead of wounds in his home, his executed will was not found. Among other things, the Court said:

"this issue, as we have stated, gives rise to the query whether proof offered by the Appellee in this case is sufficient to overcome the presumption of revocation by the testator. It is well settled in this State that the presumption of destruction *animo revocandi* is subject to being rebutted by circumstances which tend to show a contrary conclusion [citing cases]. Appellant cites numerous cases where the Court has held that the presumption was not overcome and denied probate of the will. Since the question is whether the evidence in this record sustains the chancellor's order admitting the will to probate, other cases decided on other facts by this or other courts constitute little assistance in the determination of a case of this kind * * *.

As was held in *Matter of Page*, 118 Ill. 576, 8 N.E.2d, 852, 59 Am. Rep. 395 it is not necessary that the Court be able to determine what happened to a will if there is evidence that indicates it was not revoked or cancelled by the testator * * *."

■■ It is the well settled rule of this and most jurisdictions that if a will cannot be found, that it is presumed to have been destroyed by the testator *animo revocandi*. However, it is also the rule that this presumption is subject to being refuted by circumstances showing a contrary conclusion, such as statements by the testator that he did not intend to revoke the will; that he entertained a kind and loving attitude toward the proposed beneficiary under the will; and lastly, that other persons who had an adverse interest had possession or access to the testator's will either before or after his death. *In re: Moos' estate, supra.*

■■ In the instant case we have no declarations by Aunt Emma that she had revoked the will or intended to do so, and we have one of three identical, executed, and witnessed documents in the possession of the drafter. We also have a continuing good relationship between the beneficiary and the decedent up to the date of her death, and we further have the possibility of access to two of the three identical documents by adverse parties. All these matters moreover were considered by the trial court and a jury. On the basis of these findings this Court neither wishes to substitute its judgment for that of the jury or trial court, nor does it find the decision contrary to the manifest weight of the evidence.

Appellant next contends that prejudicial error was committed by the defendant Counsel asking his witness, Wilma Bey, if she knew the con-

dition of Tyna Jackson's health prior to her coming to live with the decedent and prior to her death. The witness testified as to a telephone conversation she had with Tyna Jackson in August of 1969 in which Tyna stated that "some people were trying to put her in a mental institution."

■■ This line of questioning was improper but in this Court's opinion not so prejudicial as to require reversal. The question of Plaintiff's mental condition was not an issue in the trial. The sole question before the Court was as to whether there was, or was not, a valid will entitled to probate. Whether the Plaintiff was, or had been in a mental institution would have nothing to with the admissibility of the will in this case. Counsel for the Defendant also asked the Plaintiff, Edith Timmons, "What has been the condition of your health during the past—since October 14, 1968?" The witness refused to answer and the Court sustained the objection as to this question. No mention was made as to her mental condition, nor were any further questions asked. No error was committed as no inference of her mental condition was poised before the jury.

■■ Appellants contend it was improper to ask whether Gwendolyn was paying on a mortgage she had co-signed with the decedent on the property, and that even though the question and answer were stricken, the jury was so prejudiced that the Plaintiffs were denied a fair and impartial trial. We do not believe this is so. We do not believe the question would prejudice the jury against the Plaintiff, but at most, indicated the good relationship between Gwendolyn and the decedent. In any event, there was no undue emphasis placed on the question, and if it were in any way to be considered improper, the prompt action of the Court in striking it from the record assured that no detriment accrued to the Plaintiff.

Counsel for Appellants further contend that Plaintiffs Instruction # 6 should have been given, which is in effect IPI instruction 5.01, as modified:

"If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:

1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.
2. The evidence was not equally available to an adverse party.
3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.
4. No reasonable excuse for the failure has been shown."

■■■ Counsel argues that this should have been given because the defense did not call Welcom Jackson. The complaint herein makes Wel-

com Jackson a party, but fails in any way to seek any relief against her. As drafted, the tendered instruction was improperly drawn as it refers to the failure of the defendant "to offer evidence" rather than failure "to produce a witness." In addition, the point is not well taken as the record discloses no reason why this witness might, or should have been called.

Counsel for appellants further contend that the following instruction should have been given, *viz.*,

"The Court instructs the jury that evidence of friendship and kind treatment of the decedent by the proponent of the will is not sufficient evidence to overcome the presumption of revocation."

Counsel has cited the *Marsh* case, *supra*, as authority for this instruction. But in the *Marsh* case, citing the *Moos'* case, the Court did make this statement in part, but added the words "standing alone."

■■ The Court refused to grant this instruction on the ground it singled out one issue only. As indicated above, this is correct. This is but one of several issues in the overcoming of the presumption of revocation.

Counsel for Appellants further contend that Plaintiffs' Instruction # 10 should have been given:

"The Court instructs the jury that it will not be presumed that a last will has been destroyed by any other person without the knowledge of or authority of the testator, even though such person may have had the motive and opportunity as that would be presuming a crime."

■■ It is not felt that refusal of the Court to give this instruction caused any reversible error, especially in view of the other instructions given.

It should be noted that there are major factual differences between the instant case and those cited by the Appellant. Here there were triplicate originals of the will, there was no statement of intention of revocation; there was no apparent reason for revocation; and finally, Mrs. Hurley had sent one of the executed and witnessed triplicates to her attorney for safekeeping.

■■ Counsel for Plaintiffs further contend that prejudicial error was committed by opposing counsel as a result of improper questions and remarks. With this we do not agree, the Trial Court properly ruled upon the same, and none of the remarks or questions was pertinent or prejudicial to the ultimate question before the court and jury.

It is the opinion of this Court that this record shows the proper issues, together with sufficient instructions, were submitted to the jury and that both sides received a fair trial.

Judgment affirmed.

T. MORAN and ABRAHAMSON, JJ., concur.