*In re* ESTATE OF HELEN N. BABCOCK, Deceased—(Russell Babcock, Petitioner-Appellee, *v.* Shirley J. McDonnell *et al.*, Respondents-Appellants).

Third District No. 3—83—0046

Opinion filed November 9, 1983.

Ralph Froehling, of Froehling, Taylor & Weber, of Canton, for appellants.

Tom Ewing, of Proctor & Ewing, of Lewistown, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

The circuit court in this case admitted to probate a copy of Helen Babcock's June 18, 1970, last will and testament, as her last will and testament. In so doing, the court concluded that the presumption of revocation, arising from nonproduction of the original, had been overcome by proof from petitioner Russell Babcock. Respondents Shirley McDonnell and Norman Keane appeal from the judgment admitting the will to probate as Helen Babcock's last will and testament. They contend that the evidence was insufficient to rebut the presumption of revocation. They also assert that two evidentiary errors were made by the court. These included error in the admission into evidence, over Dead Man's Act objection (Ill. Rev. Stat. 1981, ch. 51, par. 2, now Ill. Rev. Stat. 1981, ch. 110, par. 8—201), of certain testimony by Laura Babcock, wife of an interested party, and error in the court's refusal to permit questioning of Shirley McDonnell by her own counsel concerning conversations with the decedent.

The record reveals that Helen Babcock was the wife of Cassius Babcock. Cassius was born in Fulton County, Illinois, one of five brothers. As a young man, Cassius moved to Detroit and there married Helen Keane, the decedent herein. Prior to his death in 1969, Cassius had acquired, via inheritance, an undivided interest in the Babcock family farm in Fulton County, along with his three brothers. The farm, consisting of 276 acres, 176 of which are tillable, had been in the family for over 100 years. Helen and Cassius had been regular visitors there during their marriage. When Cassius died in December 1969, his undivided interest in the farm passed, under his will, to Helen Babcock, his wife and the decedent herein. On June 18, 1970, Helen Babcock executed a will that a Detroit, Michigan, attorney had prepared at her direction. This is the June 18, 1970, will that was pro-

bated by the circuit court in this action. In this will she devised whatever interest she had in the Babcock family farm to her deceased husband's brothers, Frank, Hardy and Russell. Coupled with the devise of the farm interest was a direction to distribute to the three brothers, in equal shares, certain funds then on deposit in a Detroit bank account. The residue of her estate, under the will, was given to Shirley McDonnell and a Detroit bank, as trustees, with directions to pay the income and necessary principal, to Helen's sister, Mae, during her life, and at Mae's death, to distribute the remaining assets, in equal shares, to Shirley and her brother Norman Keane. Shirley and Norman were Helen Babcock's only heirs at law at the time of her death.

One of the witnesses to execution of the will, Francis O'Neil, a cousin of Helen's who was living in Detroit, testified at trial by way of deposition. Mr. O'Neil stated that Helen indicated at the time of execution of the will that she was glad to get the farm property back into the hands of the owners, her husband's brothers. O'Neil testified that Helen discussed the will frequently at first, but over the years, not as much. In her discussions with him, however, she always considered the farm to belong to the Babcock family, and indicated her satisfaction that the family would have control over it again.

The substance of the will, with respect to the devise of the farm to her Illinois relatives, was also conveyed by Helen to the Fulton County Babcocks in a 1970 letter. In the letter, Helen stated that the farm property would return to the brothers after her death. Also in the record is correspondence over the years between Helen Babcock and her Fulton County relatives. The correspondence demonstrates a continuing love, affection and friendliness by Helen to them. In a 1971 letter, Helen tells Russell Babcock and his wife, Laura, that she does not want any income from the farm, that they should put it in the bank for taxes. Helen continued, until shortly before her death, to stay in touch with the Illinois Babcocks, and the record contains letters, cards and evidence of phone calls and small cash gifts from her. None of the letters after 1971 that were admitted into evidence mention the will or its dispositive provisions respecting the farm. Neither did any of the letters indicate any intention to or action toward revocation of the June 18, 1970, will or any alteration of its provisions respecting the farm property.

In May 1976, an explosion and fire near the home of Helen and Mae, her sister, required their change of residence, and from May 1976 until March 1977, the sisters moved in with the family of Francis O'Neil, their cousin. Mr. O'Neil, in his deposition, testified that during that time Helen indicated that she still had the will and was

happy that she had everything ready in case of her death. During this time, as well, Helen continued to indicate to him her contentment that the Babcock farm would be back with the Babcock family. These conversations between O'Neil and Helen were subsequent to the deaths of two of her brothers-in-law in Fulton County. Hardy died in March 1974, while Frank died in July 1975. As previously noted, Helen continued to keep in close touch with the remaining Illinois Babcocks until shortly before her death in March 1980. Her relations with them continued to be friendly and affectionate.

Respondent Shirley McDonnell, who frequently saw her aunt during the final years of Helen's life, also testified concerning the relationship between Helen and the Fulton County Babcocks. Testifying under section 60 (Ill. Rev. Stat. 1981, ch. 110, par. 60, now Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), as an adverse witness, McDonnell conceded that the relationship was good, but added that sometimes "some things" were said in the privacy of her own home by Helen. She did state that regular communication occurred between Helen and her Fulton County relatives until shortly before her death, including phone calls, letters and gifts. McDonnell indicated that her aunt had never received any income from the Babcock farm and had not requested it. She conceded that her aunt had always told her about the will, and, at one point, that she always knew her aunt was leaving the farm to the Fulton County Babcocks. She also testified that her aunt had never indicated that she had destroyed the will or that she had any intention to revoke it.

Shirley McDonnell also testified that she made a search of her aunt's belongings after her death, and there found a copy of the June 18, 1970, will, which copy was given to McDonnell's Detroit attorney, who then forwarded it to counsel in Fulton County. McDonnell denied entering her aunt's safety deposit box shortly before her aunt's death for the purpose of removing and destroying the original will. She admitted, however, that in February, 1980, only one month before Helen Babcock's death on March 8, she went to the bank and emptied out all of the contents of the safety deposit box. McDonnell stated that she did this at Helen Babcock's direction, who at the time was dying of cancer. She stated that no will was in the box. McDonnell also testified in 1977 she had assisted her aunt in removing the contents of a prior safety deposit box and transferring it to the one which was held at the time of her aunt's death.

Further evidence established that Helen Babcock's savings accounts had been joint accounts, with Shirley McDonnell, some within several months of Helen's death. According to Shirley, this was done

so that she could help her aunt with needed business affairs. The record also indicates that Helen and her brother, Norman Keane, each received $50,000 from those accounts after Helen's death.

Petitioner's case also included testimony from Pearl Babcock, wife of deceased Babcock brother, Frank. Pearl indicated the continuous good relations between Helen and the Fulton County relatives throughout Helen's life. She also testified that Helen always declined the family's offer of any income from the farm.

Another witness for petitioner was Laura Babcock, wife of petitioner Russell Babcock, brother-in-law of Helen Babcock and surviving Babcock brother. Laura Babcock's testimony, concerning various conversations she had with the decedent Helen Babcock, was given over the objection by defense counsel that it was contrary to the Dead Man's Act, as Laura was the spouse of an interested party. Her testimony concerned the relationship between Helen and the Babcock family, and was based upon letters and upon phone conversations. She testified that their phone conversations were similar to family visits, during which Helen would inquire about the family members and their health and doings. She stated that Helen always refused any income from the farm, when it was offered, stating that she wanted it put back into the farm. The substance of these conversations corroborated other evidence previously admitted indicating Helen's love and affection toward the Fulton County family. She also testified that Helen had never indicated to her any intention to revoke her 1970 will. In addition, Laura also testified to various letters and cards, which were admitted into evidence, all from Helen to the Babcock family in Fulton County. These indicated a close and continuing affectionate relationship. In addition, Laura testified to a conversation with Helen during which Helen stated that her Michigan relatives, meaning Shirley and Norman, were only concerned with "money, money, money." Additionally, Laura testified to a phone conversation with Shirley McDonnell, after Helen's death, during which Shirley stated that she and Norman always knew that the Illinois family would get the farm. The statement was denied by Shirley during her direct examination.

The respondent's case included testimony by Shirley McDonnell, who had previously testified as an adverse witness during petitioner's presentation of evidence. Her own counsel sought to elicit testimony from her about Helen Babcock's response to a certain letter of May 1976 from a Lewistown attorney to Pearl Babcock. A Dead Man's Act objection was interposed as to any testimony from Shirley McDonnell concerning conversations she had with the decedent Helen Babcock. The objection was sustained over McDonnell's counsel's argument

that those matters had been opened up during the prior section 60 examination such that broad latitude ought be given him in examining McDonnell. Thereafter, counsel proceeded with an offer of proof which initially focused upon the effect of the May 1976 fire upon her aunt, and then later on the relationship of her aunt and the O'Neils as well as the 1976 letter and its effects. The testimony concerning the O'Neils focused upon statements by Helen concerning Mr. O'Neil's attempts to talk Helen into helping pay for his son's education and other items. The letter of May 1976 was from a Fulton County attorney to Pearl Babcock, inquiring as to the status of the farm, within the context of Cassius' estate. The import of it was that the attorney did not know what provision had been made in the event of Helen's death. Shirley McDonnell testified that when her aunt received a copy of the letter, she became upset with the Illinois relatives.

Another witness for the respondents was Rose Keane, wife of Norman Keane, a respondent in the action. She testified that Helen's attitude toward the Illinois Babcocks changed as a result of her receipt of the May 1976 letter. She testified that her aunt became upset with the letter, not understanding its meaning. She stated that Helen showed it to her, inquired as to its meaning, and stated that it looked like someone was trying to get something.

The trial court, after hearing all the evidence, probated the June 18, 1970, will of Helen Babcock, finding that the petitioner had overcome the presumption of revocation arising from nonproduction of the original will. In his letter accompanying the order, the trial judge indicated that the case revolved, in part, around determinations of witness credibility. As to the May 1976 letter, testified to by Rose Keane, the court indicated its serious question concerning her credibility and her explanation of the effect of the letter on Helen. The court also noted the extensive and largely uncontested evidence of a continuing attitude of love and affection toward the Illinois Babcocks on the part of Helen Babcock. The court also pointed out that even after the alleged upsetting circumstance of the fire and the letter, Helen indicated to Francis O'Neil her continued desire and intent that the Babcock farm stay with the Illinois Babcocks.

On appeal, the respondents initially argue that the evidence was insufficient to support the trial court's conclusion that the presumption of revocation was overcome. As this court noted in *In re Estate of Netherton* (1978), 62 Ill. App. 3d 55, 57-58, 378 N.E.2d 800, quoting from *In re Estate of Moos* (1953), 414 Ill. 54, 57, 110 N.E.2d 194:

"Where a last will and testament, after its execution, is re-

tained by the testator and cannot be found upon his death, it is the well-settled rule of this and of the majority of jurisdictions that it will be presumed to have been destroyed by him *animo revocandi*. [Citations.] The same cases establish that the presumption is subject to being rebutted by circumstances which tend to show a contrary conclusion, and that the burden is on one seeking to probate such a will to prove that it was unrevoked at the testator's death."

In *Jackson v. Jackson* (1971), 132 Ill. App. 2d 66, 71, 268 N.E.2d 62, the court noted possible factors helping to rebut the presumption:

"However, it is also the rule that this presumption is subject to being refuted by circumstances showing a contrary conclusion, such as statements by the testator that he did not intend to revoke the will; that he entertained a kind and loving attitude toward the proposed beneficiary under the will; and lastly, that other persons who had an adverse interest had possession or access to the testator's will either before or after his death. [Citation.]"

The Illinois Supreme Court has noted that because the evidence with respect to any rebuttal will vary from case to case, other cases "constitute little assistance in [making] the determination." (*In re Estate of Morgan* (1945), 389 Ill. 484, 487, 59 N.E.2d 800.) In *In re Estate of Moos* (1953), 414 Ill. 54, 60-61, 110 N.E.2d 194, the court, in affirming the trial court's rejection of the sufficiency of rebuttal evidence, stated:

"*** the presumption of revocation by the testator is effectively overcome by evidence which shows that the testator maintained an attitude of friendship, confidence and reliance toward the proponents up to the time of his death. Evidence of such nature has been held to reflect the attitude of a testator which makes it unlikely that he would have revoked a will benefiting those with whom he continued to have harmonious relations. The weight to be given such evidence, however, necessarily varies with the given facts of each case. [Citation.] There was evidence in this case, which was the subject of testimony offered both in rebuttal and surrebuttal, that the testator held the proponents in high regard both before and after the execution of his will and until the date of his death. However, even accepting appellants' version of the relationship as controlling, we are of the opinion that such evidence standing alone is insufficient to show an unlikelihood that the testator would revoke his will.

In the decisions we have examined, many of which are analyzed in the *Morgan case*, the evidence of continuing friendly and loving relations was supplemented by declarations of the testator, made subsequent to the execution of the will and prior to and at the time of death, which showed an unchanged attitude on the part of the testator relative to the disposition of his property."

In the case at bar, appellant's counsel argues that the evidence was insufficient to rebut the presumption of revocation, because there was no evidence of supplemental declarations of the testator after 1976 indicating her desire to leave the farm to the Fulton County Babcocks. Contrary to appellant's suggestion, *Moos* does not require supplemental declarations. What is required to supplement evidence of continued friendly and loving relations is evidence indicating an unchanged attitude respecting the disposition in the will. That may be direct evidence, such as declarations of the testator, or circumstantial, from other acts and circumstances which permit an inference of such an unchanged attitude. Based on a review of all the evidence, we find that there was sufficient evidence presented to overcome the presumption of revocation. Initially, we note the clear and specific direction of the will itself, and the statements near the time of its execution by Helen about the farm property. These statements were made to Francis O'Neil and to the Illinois Babcocks in letters from Helen. There is also the continual attitude of friendliness, love and affection demonstrated by Helen toward her Fulton County relatives until shortly before her death. This is evident from her own correspondence and gifts, as well as from the testimony of Francis O'Neil and Pearl Babcock. Additionally, the close family connection was admitted by Shirley McDonnell several times. The appellants seek to contradict this evidence by pointing to an alleged change in attitude occurring about the time of receipt of the May 1976 letter from the Fulton County attorney. However, in addition to the court's credibility questions respecting that testimony, there are statements from Helen's own correspondence and from her conversations with Francis O'Neil, dating from after the receipt of the letter, which clearly indicate an unchanged attitude toward the Fulton County relatives and the farm property. Francis O'Neil testified that while Helen and her sister were staying with them, which was until March 1977, Helen had indicated to him that she still had her will and was happy to have the Babcock farm back in Babcock hands.

As concerns the period after 1977, until her death early in 1980, there is little direct evidence indicating her intentions and de-

sires respecting the farm. There is, though, the unchanged attitude of love and affection toward the Illinois Babcocks. There is also indirect evidence establishing her continued contentment with the June 1970 will and its disposition of the farm property. In none of Helen Babcock's conversations or letters did she ever state, to anyone, that she had revoked the will or suggest to anyone a desire to do so. She never indicated any displeasure with the will's provisions. It is significant that although Shirley McDonnell was close to Helen in her later years, helping her with business affairs, Helen never mentioned to her any revocatory intention or action. Shirley McDonnell testified that her aunt had always told her about the will and that she had always known her aunt was leaving the farm to the Babcocks. If Helen had revoked the will, with a desire to have the farm property pass to her own blood relatives, being Shirley and Norman, it would have been likely that she would have informed Shirley of it during that time, since Shirley was taking care of her business and they both knew Helen was very sick near the end. Additionally, there is the evidence of Helen's continual refusal, from the time of the will until her death, to accept any income from the farm property, despite offers of such from the Illinois relatives. This conduct on her part, which is uncontradicted, also indicates an unchanged attitude toward the farm property and its disposition to the Illinois Babcocks. Lastly, there is Shirley McDonnell's statement, to Laura Babcock, shortly after Helen's death, acknowledging that she and Norman always knew that the farm was to go to the Babcocks, and that they would have full interest. Although this statement, and some other evidence, was contradicted by testimony from Shirley and Rose Keane, those questions of credibility and weight were for the fact finder, and we find no basis to overturn his decisions thereon. While none of the evidence, standing alone, would be sufficient to rebut the presumption of revocation, taken together, in its entirety, the evidence sufficiently establishes Helen's continuing unchanged attitude toward her relatives in Fulton County and the disposition of the farm in her June 18, 1970, will. Little purpose would be served in analyzing other cases, for all are distinguishable, and the supreme court has repeatedly emphasized that in this area each case must be determined on its own facts and circumstances.

■ We turn next to the assignments of error centering upon the evidentiary rulings of the trial court. It was error, as appellants' contend, to permit Laura Babcock, the wife of Russell Babcock, to testify as to conversations she had with Helen, the decedent. The Dead Man's Act (Ill. Rev. Stat. 1981, ch. 51, par. 2, now Ill. Rev. Stat.

1981, ch. 110, par. 8—201) renders incompetent the testimony from an interested person concerning conversations and events taking place in the presence of the deceased person, except under certain exceptions which do not apply herein. The act has been construed over the years to also prohibit a spouse of an interested party from testifying to events and conversations in the presence of the decedent. (*Peters v. Peters* (1941), 376 Ill. 237, 33 N.E.2d 425; *Heineman v. Hermann* (1943), 385 Ill. 191, 52 N.E.2d 263; *In re Estate of Teehan* (1936), 287 Ill. App. 58, 4 N.E.2d 513.) While this court, along with noted commentators (2 Wigmore, Evidence secs. 578, 578a (3d ed. 1940); E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 606.1 (3d ed. 1979); S. Gard, Illinois Evidence Manual Rule 405 (1963)), believes that this rule of the Dead Man's Act sets forth an anachronistic approach, which should be removed, nevertheless we are in no position to overrule the established law, as set forth by the Illinois Supreme Court. We firmly believe, however, that these questions of credibility and weight should be left, as such questions usually are, for the fact finder to determine. In this regard, we would urge both the Illinois Supreme Court and the legislature to scrutinize the continued viability and reasonableness of the Dead Man's Act provisions.

■ Having noted our position on the broad question, we turn back to the facts of the case at bar. Laura Babcock's testimony concerning conversations with Helen Babcock was improperly admitted by the court. While much of Laura Babcock's testimony as to conversations with Helen Babcock was cumulative of other evidence in the record, it was nevertheless sufficiently prejudicial in its substance and tone as to justify a reversal and a remandment for a new trial. Particularly prejudicial was Laura's testimony concerning Helen's characterization of her Michigan relatives' greedy natures. While the evidence, apart from Laura's testimony, was sufficient for the court to conclude that the presumption of revocation had been rebutted, we cannot gauge what effect Laura's testimony may have had on the fact finder's determination of the credibility of the witnesses and the weight afforded their testimony. Accordingly, based upon the error in the admission of Laura Babcock's testimony, we reverse the judgment entered and remand for a new trial.

■ We also address the final issue on appeal, as that may aid the court upon retrial. The final assigned error is the failure of the court to permit respondents' counsel to examine Shirley McDonnell on the scope of the relationship between Helen and the Illinois Babcocks. Counsel argued that because the relationship had been inquired into during Shirley's section 60 examination, it was proper for him to take

up the inquiry on direct examination. The court disagreed, and found that the Dead Man's Act prohibited Shirley, as an interested party, from testifying to conversations with Helen before her death. Offers of proof were made. We note that the initial offer of proof related to the May 1976 fire and Helen's relationship with the O'Neils. The other dealt with the reaction of Helen to the May 1976 letter from the Illinois attorney. Those subjects were not opened up by petitioner's counsel during his section 60 examination of Shirley McDonnell. Certainly, as to conversations and events that were specifically inquired into by the petitioner's counsel during the section 60 examination, opposing counsel was entitled to inquire, as the door had been opened and the Dead Man's Act objection waived as to those specific areas. However, the objection, as here, is still valid as to other areas and specific conversations and events which were not opened up during the previous examination. Furthermore, in the instant case, the substance of the offer of proof, respecting the effects of the letter on Helen's attitude, was testified to and put forth by Rose Keane, on behalf of the respondents. We find no error to have been committed respecting Shirley McDonnell's direct testimony.

For the reasons stated, the decision of the circuit court of Fulton County is reversed, and the case remanded for a new trial, consistent with the opinions expressed herein.

Reversed and remanded.

STOUDER, P.J., and SCOTT, J., concur.